UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS ANDREW SCHOENBERGER,
CICADA 3301 METAVERSE, L.L.C., a Utah
domestic limited liability company, and
THOMAS ANDREW SCHOENBERGER doing            Case No. 25-cv-_____
business as CICADA 3301, CICADA 3301 TOKEN,
CICADA 3301 PORTALS, and SOPHIA MUSIK,      Hon._____

       Plaintiffs,

v.

LISA ANNE DERRICK and PAULA SUE DAVIS,

       Defendants.
_____/

CRANBROOK LAW GROUP, P.C.
Barry R. Powers (P40589)
10 S. Main St., Ste. 401
Mount Clemens, Michigan 48043-7910
(248) 515-8599
Plaintiffs' counsel
_____/


VERIFIED COMPLAINT AND JURY DEMAND
_____

VERIFIED COMPLAINT

    Plaintiffs, Thomas Andrew Schoenberger, Cicada 3301 Metaverse, L.L.C., a

Utah domestic limited liability company, and Thomas Andrew Schoenberger doing

business as Cicada 3301, Cicada 3301 Token, Cicada 3301 Portals, and Sophia

Musik, for their verified complaint against Defendants Lisa Anne Derrick and Paula Sue Davis, say:

## PARTIES, VENUE, AND JURISDICTION

1.     Plaintiffs Thomas Andrew Schoenberger ("Thomas") is domiciled in, and a citizen of, Utah, who conducts business in the Eastern District of Michigan.

2.     Plaintiff Cicada 3301 Metaverse, L.L.C. ("Company") is a domestic limited liability company formed and existing under the laws of Utah with its principal place of business in Utah, and, thus, is a citizen of Utah. The Company conducts business in the Eastern District of Michigan.

3.     Thomas does business as, and brings this action in the names of,  Cicada 3301, Cicada 3301 Token, Cicada 3301 Portals, and Sophia Musik, and he conducts those businesses together, with their joint and collective principal place of business in Utah. Thomas conducts business in the names of Cicada 3301, Cicada 3301 Token, Cicada 3301 Portals, and Sophia Musik in the Eastern District of Michigan.

4.     Thomas is a preeminent, award-winning, and prolific composer, pianist, and musician, who has mastered and enjoys expertise in the performance and playing of music on numerous musical instruments. He is 65 years old, and his career has spanned decades.

5.     In addition to his career in music, Thomas conducts the business, and is the co-founder and the sole member of the Company.

6.   Cicada 3301 is a group of creative individuals who create music, art, poetry and puzzles meant to inspire those interested in history, music, and culture.

7.   The Company was originally formed with its headquarters in California as a California limited liability company.

8.   After conducting business in California for several years, the Company moved to Utah and was re-formed as a Utah limited liability company, as successor to the original company.

9.   The Company is the inventor and owner of the copyrighted name "Cicada 3301" and all variations, styles, and derivations of that term and brand, of which Thomas and the Company, alone, have sole, exclusive, free, and unencumbered rights. They also have copyright rights in the Cicada logo and trademark rights in the Cicada logo and in the Cicada 3301 word trademark.

10.   Thomas and the Company also operate and conduct business as, under, and in the copyrighted names of "Cicada 3301," "Cicada 3301 Token," and "Cicada 3301 Portals," which names and brands, likewise, were invented by Thomas and the Company and are the sole and exclusive property of Thomas and the Company. (Thomas and the Company are collectively referred to below as "Thomas.")

11.   Thomas has numerous listeners, viewers, participants, and devotees in California, Utah, and throughout the United States, including many who are residents of Michigan and many who are, in particular, residents of the Eastern District of Michigan.

3

12.    The Company is operated on a for-profit basis, but it also commits a large part of its operation and resources to charitable causes, such as raising money for the impoverished and displaced women and children in war-torn countries. Although sometimes referred to as a "movement," it is non-political, utterly private movement, to the extent it may be characterized as a "movement," at all.

13.    Defendant Lisa Anne Derrick ("Derrick") is domiciled in California and is a citizen of California who has at times pertinent to this action conducted and conducts business in Michigan, including in the Eastern District of Michigan.

14.    Defendant Paula Sue Davis ("Davis") is domiciled in Indiana and is a citizen of Indiana who has at times pertinent to this action conducted and conducts business in Michigan, including in the Eastern District of Michigan.

15.    Derrick and Davis have acted and continue to act in concert with each other and with the privies of each other, each with knowledge of illegal, unlawful, wrongful, tortious, unethical, and improper conduct, malfeasance, misfeasance, and non-feasance of one another as described herein.

16.    The acts and omissions of Defendants give rise to claims averred herein, whether or not solely arising under the laws of Michigan or the laws of other jurisdictions, are actionable against Defendants and others, and entitle Thomas to the relief requested herein, as, and to the extent, they further give rise or may be determined and adjudicated to give rise to claims arising under the laws of other States of the United States, as the acts and omissions detailed herein were done and

4

caused injury not only within Michigan and Utah, and also within still other States, across state lines, as, individually or cumulatively, part of or the whole of the conduct by Defendants of interstate activities, conduct, operations, enterprises, and systematic patterns of ongoing unlawful and illegal conduct and activity.

17.     Defendants' past and ongoing unlawful and illegal activity was, has over the course of time been, and is being committed, developed, and compounded to cause injury to Thomas, and to exacerbate harm and injury to Thomas, with the design of causing and exacerbating to Thomas the very harm they have, in fact, inflicted on him.

18.     Defendants' past and ongoing unlawful and illegal activity, in fact, has caused and exacerbated, and is causing and exacerbated, great harm to Thomas. The unlawful and illegal conduct is continuing and, unless restrained by the Court or other court of competent jurisdiction, will continue; it continues to cause and exacerbate harm daily anew to Thomas, and Thomas will continue to suffer harm and exacerbation of injury daily anew unless and until restrained by the Court or other court of competent jurisdiction.

19.     The matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

20.     The matter in controversy in this action is between citizens of different States; thus, this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1).

21.     This Court has jurisdiction over all parties to this action.

22.     Venue is proper in this Court.

ALLEGATIONS COMMON TO ALL COUNTS

23.     Plaintiffs incorporate by reference as though fully set forth herein all averments above.

24.     Defendants are former associates-turned-detractors of Thomas, and formed, with others, a growing group of detractors, including Melissa Blackburn Bogaerts, James Stewartson, and Cory Michael Daniel aka ThePhoenixEnigma aka brujo2u to foment false facts of and concerning Thomas to aid them in their vicious campaign to discredit and destroy Thomas. That group has been continuously growing at an increasingly rapid rate as time passes, and their vicious campaign has been continuing and gradually intensifying, from the date of the formation of this group through present day.

25.     Defendants have assisted others in their joint, inter-related, inter-twining, and ongoing parallel campaigns to discredit, destroy, and otherwise injure, Thomas, and to conceal and destroy evidence of such wrongdoing.

26.     Upon information and belief, Derrick, in active concert with Davis knowledgeable of the wrongdoing, and with others knowledgeable of the wrongdoing, solicited Bay City, Michigan resident and ex-convict, Robert Allen Sauerwald, for the purposes of recruiting him and retaining his services for hire in and from the Eastern District of Michigan to cyberstalk, harass, terrorize, and

6

otherwise target and induce others to target, Thomas online using, among other things, Sauerwald's "The Lone Cicada" YouTube channel based in, generated from, and operated out of Bay City, Michigan, within the Eastern District of Michigan.

27. In the wake of that solicitation, upon information and belief, Sauerwald did, in fact, agree with Derrick, Davis, and other co-conspirators to provide such services, operating out of his residence and business locations in the Eastern District of Michigan with knowing and intentional participation, facilitation and material assistance of Defendants and of those acting in active concert with them knowledgeable of the wrongdoing, as well as of others, and promised to perform such services working in such locale, and generating injurious communications from that locale, in return for significant compensation from Defendants and, upon information and belief, with contributions from other privies and co-conspirators along with Defendants and Sauerwald.

28. Sauerwald did, in fact, in active concert and participation with Defendants and others knowledgeable of the wrongdoing, perform such services within and from the Eastern District of Michigan to the detriment and injury of Thomas, through devious means including but not limited to the communication to third parties of false and malicious statements of and concerning Thomas, with the specific intent to inflict such harm on Thomas.

29. Defendants, with contributions from co-conspirators along with them and others, did pay Sauerwald, or did cause others to pay and deliver to Sauerwald,

such compensation, benefits, and other value, in exchange for such agreements, promises, and for his performance and transmissions of such communications, cyber-stalking, cyber-harassment, and related services, as well as other services incidental to such services, and supplemental such services, alone or with the material assistance and participation of Defendants, their privies and co-conspirators, and others with the intent and effect of maliciously, tortiously, unlawfully, illegally, and unethically causing such injuries by unlawful means and for unlawful purposes.

30.     On January 16, 2025, Davis hosted a livestream entitled "The Evidence Speaks for Itself" on her "SewerTown" Rumble channel in which she, her husband, Jesse Davis, Daniel Doud, and others stalked, harassed, defamed, and put in a false light Thomas, with statements including "Tommy boy, stop being stupid." Jesse Davis and Doud brandished guns at the camera.

31.     Defendants have taken no action to prevent further false accusations against Thomas, whose life remains in danger to this day, because he has been falsely accused and continues to be falsely accused of wrongdoing, including domestic terrorism and of being a "fascist."

32.     The crimes and bad acts of which Defendants blame and falsely accuse Thomas, offenses he did not commit, are capital offenses, and such false and malicious communications have put and continue to put him in jeopardy of vigilante retaliation by proxies of those whom Defendants have incited to probable violence,

as well as in danger of arrest, conviction, and punishment up to and including life imprisonment and the death penalty.

33.    Defendants have put Thomas's life in danger and have destroyed his ability to earn a living as a composer. As a direct and proximate result of Defendants' unlawful conduct, Thomas is permanently psychologically paralyzed, traumatized, and in profound fear for the safety and well-being of family, friends, and himself.

34.    Defendants' plan, artfully executed, working individually, together, and in active concert with others having knowledge of the wrongdoing, was to "cancel" Thomas, permanently.

35.    Sadly, they have succeeded.

36.    Defendants have caused Thomas to live in constant turmoil from Defendants' malicious communications, which include but are not limited to Twitter, its successor, X, blog sites, news articles, old and new forms of media, in private messages, on servers and platforms, including servers Defendants hosted for groups of computer internet hackers, media representatives, compensated trolls, as mercenaries to act at Defendants' behest, to spread further their own, evil "narrative" against Thomas.

37.    On September 4, 2025, in *Schoenberger v Trustees of Michigan State University*, State of Michigan, Wayne County Circuit Court Case No. 25-012153-CZ, Defendants, through their counsel providing them joint representation in that action, Nicholas A. Cirino of Detroit, Michigan, filed in the Wayne County Circuit

9

Court in Detroit, Michigan, their "Motion for Summary Disposition Pursuant to MCR 2.116(C)(1)(Lack of Personal Jurisdiction)" alleging Defendants' lack of minimum contacts with Michigan and seeking dismissal of the action against them pending in Wayne County Circuit Court on that sole legal, factual, and procedural basis.

38.    At page 4 of the brief Defendants filed in support of Defendants' motion, Defendants, acting together and jointly pursuant to a common plan, purpose, and active conduct in execution of such plan, in active concert and joint and common participation with each other and with their common legal counsel providing them joint representation in defense of the claims asserted against them in that action, wickedly, falsely and maliciously state that Derrick "*was sexually assaulted by Schoenberger in the 1990s . . . .*" (Emphasis added). Defendants further, acting together and jointly pursuant to a common plan, purpose, and active conduct in execution of such plan, in active concert and joint, mutual, and common participation and joint representation in defense of the claims asserted against them in that action, with each other and with their common legal counsel providing them such counseling and advocacy services, wickedly, falsely and maliciously state that Thomas "has *pursued a campaign of harassment*" against Derrick since 2020. *Id.*

39.    Defendants, acting together and jointly pursuant to a common plan, purpose, and active conduct in execution of such plan, in active concert and joint and common participation with each other and with their common legal counsel

providing them joint representation in defense of the claims asserted against them in that action, further wickedly, falsely and maliciously state that Thomas has engaged in an "online *harassment campaign* against [Davis] that started in 2017 . . . ." *Id*. at p. 6.

40.     In her affidavit filed in support of Defendants' motion (and attached as Exhibit 5 to the brief in support of the motion), Derrick, in active concert and joint and common participation with Davis and their common legal counsel providing them joint representation in defense of the claims asserted against them in that action, wickedly, falsely and maliciously states that, at some unspecified time, during a visit with Thomas, she "fell asleep and *woke up to Schoenberger having non-consensual sexual intercourse with [her]*." Derrick Affidavit at p. 2 (emphasis added). She further, in active concert and joint and common participation with Davis and their common legal counsel providing them joint representation in defense of the claims asserted against them in that action, wickedly, falsely and maliciously states that she "began to share [her] *truthful story* about *[her] nonconsensual sexual encounter with Schoenberger*." *Id*. at p. 3 (emphasis added).

41.     Derrick further, in active concert and joint and common participation with Davis and their common legal counsel providing them joint representation in defense of the claims asserted against them in that action, wickedly, falsely and maliciously states that Thomas harassed and stalked her ("Schoenberger sent me an

unsolicited harassing email in 2019" and "Schoenberger and people affiliated with him continued to harass and stalk me . . . ."). *Id*. at pp. 2-3

42.    In her affidavit filed in support of Defendants' motion (and attached as Exhibit 4 to brief in support of the motion), Davis, in active concert and joint and common participation with Derrick and their common legal counsel providing them joint representation in defense of the claims asserted against them in that action, wickedly, falsely and maliciously states that Thomas "led [her] down a path of supernatural and occult matters, which led to [her] suffering mental health issues requiring psychiatric treatment." Davis Affidavit at p. 3. She further, in active concert and joint and common participation with Derrick and their common legal counsel providing them joint representation in defense of the claims asserted against them in that action, wickedly, falsely and maliciously states that "[a]fter my mental breakdown, Schoenberger and his associates began cyberstalking me, sometimes sending me scores of emails every day. This has caused me to suffer additional trauma." *Id.*

43.    None of the false and malicious statements in Defendants' affidavits and other court papers filed with the Court quoted above are germane to either the motion or the action. All of them are entirely and absolutely gratuitous and far beyond any fact or issue arguably or possibly relevant to the factual and legal issues in the motion (the legal basis of which is limited solely to whether Defendants have

12

or have had minimum contacts with Michigan) or to the factual and legal issues, claims, and defenses, in the entire action, itself.

44.     Because Defendants have failed and refused to honor Thomas's several demands to rectify their wrongdoing, it has become necessary for Thomas to bring this action.

COURT ONE
ABUSE OF PROCESS

45.     Plaintiffs incorporate by reference as though fully set forth herein all averments above.

46.     Defendants are liable to Thomas in damages and other relief for their malicious, knowing, intentional, reckless, or negligent improper use of civil process proximately causing injury to Thomas

47.     Defendants have acted and are acting with an ulterior purpose in their misuse of process and abuse of the State of Michigan, Wayne County Circuit Court system, publishing to the world their wicked, false, and malicious statements against, of, and concerning Thomas, for the ulterior purposes including but not limited to the purposes of injuring Thomas in his reputation and otherwise, interfering with his business and contractual relationships, opportunities and expectancies, and cruelly to discredit him and inflict mental suffering, pain, and emotional distress on him, not being satisfied until Thomas is destroyed through the foul manipulation and abuse of the Michigan judicial system, doing great violence to that system, diminishing the

public trust and confidence in our judicial system, lowering Thomas in the esteem of the public, publishing through the use of this public information system these injurious and corrosive and destructive words to the entire world, to the grave injury of Thomas.

48.    The ulterior purpose is corroborated by the use, in our very judicial process, of evil and baseless personal slurs, slanders, libels, aspersions, injurious falsehoods, and the invasion of Thomas's privacy by casting him in a false light, as a sexual felon and exploiter of women in a mentally ill or otherwise vulnerable mental and physical state, effectively and repeatedly accusing Thomas of being a reprehensible rapist who would exploit mentally ill and otherwise significantly vulnerable women by rape, non-consensual sexual acts and advances, and criminal sexual conduct of the most extreme degree.

49.    A further ulterior purpose of Defendants' exploitation and perversion of our judicial process and One Court of Justice system was and is to inflict emotional distress on him, using words and false statements that are in no way arguably or possibly germane, or having any logical, rational, or legal relationship, to the averments in Defendants' motion for summary disposition for lack of personal jurisdiction over them for want of their minimum contacts with Michigan; nor are such false and malicious statements and unjust and untrue criminal and other accusations of Thomas in any way arguably or possibly germane to, or having any logical, rational, or legal relationship to any of the factual or legal bases for any

14

claim or defense in the Wayne County action but, instead, are entirely and absolutely gratuitous and posited for solely improper, illegal, criminal, and unlawful purposes.

50.    As Defendants and their common legal counsel providing them common, mutual, and joint representation in the State of Michigan court proceeding know full well, it would be a crime for Defendants falsely to report to law enforcement authorities that Thomas, himself, committed such heinous crimes – which he did not, and which Defendants know not to be true; consequently, Defendants have chosen instead to pervert, foul, and misuse the court system to effectuate the same result so as to avoid being subjected to criminal responsibility themselves; these are but a few illustrations of the many ulterior purposes of Defendants in misusing, perverting, abusing, and doing grave violence to the judicial system of Michigan and to the public trust and confidence in the Michigan court system, judicial system, both civil and criminal, as well as Michigan's One Court of Justice and to the related laws and public policies of the State of Michigan, as well as to the detriment of the citizens and residents of Michigan, and to the detriment of those who would visit and conduct business within Michigan.

51.    Defendants have committed acts in the use of process that is improper in the regular prosecution of their claims and defenses

52.    Defendants abused and are abusing the civil process by using it for their ulterior motive or purpose to defame Thomas, to cause him vexation, trouble, embarrassment, and damage to Thomas's reputation. Such use of process was and is

not legitimate, regular, or legal.

53.    As corroborating acts of Defendants' improper purpose, Defendants maliciously submitted false court papers and affidavits including defamatory statements knowingly false, and Defendants have repeated those false and defamatory statements.

54.    As a direct and proximate result of Defendants' abuse of process, Thomas has suffered and continues to suffer grave injury.

55.    As a direct and proximate result of the malicious and false court papers and proceedings, Thomas's reputation and psyche have been severely damaged, and he has suffered and continues to suffer severe mental anguish.

Therefore, Plaintiffs demand judgment against Defendants for actual, exemplary, and punitive  damages in the full to which Plaintiffs are entitled, and Plaintiffs further request the entry of a decree for all equitable relief to which they are entitled, along with an award of costs and attorney fees so wrongfully sustained.

## COURT TWO
## DEFAMATION *PER SE*

56.    Plaintiffs incorporate by reference as though fully set forth herein all averments above.

57.    The words and conduct of Defendants of and concerning Plaintiffs, as detailed above, constitute defamation by libel and slander, and defamation *per se*.

58.    Defendants' wrongful statements and conduct of or concerning Plaintiffs or falsely attributed to Plaintiffs, are defamatory and constitute defamation by libel and slander. Such statements were false and defamatory concerning Plaintiffs, made by unprivileged publication or publications to one or more third parties, maliciously, wickedly, recklessly, with reckless indifference to or disregard for the truth of the statements and communications by word or conduct, carelessly, or negligently by Defendants, actionable irrespective of special harm, and actionable given that Plaintiffs have suffered both actual and special damages and special harm as a direct and proximate result of the defamation by Defendants.

59.    Such statements were published without privilege to third parties.

60.    Such statements and conduct were made or done wickedly, with malice, maliciously, knowingly, purposefully, intentionally.

61.    Alternatively, such were made and done with reckless disregard as to their falsity.

62.    Alternatively, such statements and conduct were done by Defendants in a manner with a state of mind so reckless as to demonstrate a substantial lack of concern for whether an injury results.

63.    Alternatively, such statements and conduct were made and done negligently or carelessly as to their falsity, or were made recklessly, or with reckless disregard of, or indifference to, whether the statements and communications published to third parties were false, deceptive, or misleading.

17

64.    Such wrongful statements and conduct were of or concerning Plaintiffs and falsely attributed false statements to Plaintiffs or other falsely attributed other unlawful, improper, corrupt, or dishonest conduct or motive to Plaintiffs. At a minimum, taken as a whole and in light of all pertinent surrounding circumstances, Defendants' statements and conduct, at the very least, implied and imply the defamatory meaning that Plaintiffs are evil, sexual criminals who harass and prey on vulnerable and mentally unstable women,  dishonest, unscrupulous, corrupt, despicable, and otherwise of untrustworthy and bad character. Such defamatory statements implications were absolutely fault and materially false.

65.    Defendants, by their words and conduct, commissions of wrongful acts and wrongful omissions and failures to act under the circumstances, juxtaposed a series of facts so as to  imply a defamatory connection between them, or create a defamatory implication by omitting facts such that they are to be held responsible for the defamatory implication harmful to Plaintiffs' reputations, as detailed hereinabove.

66.    Defendants' defamation and defamation by implication against Plaintiffs as detailed above further constitute defamation *per se* inasmuch as such defamation is by the assertion, by words or conduct, stating or implying that Plaintiffs engaged in criminal acts and corruptly schemed to carry out a plan, and in fact carried out, or attempted to carry out, a plan, by corrupt means or devise, to injure Defendants. The words and conduct of Defendants imputed, have imputed,

18

and continue to impute to Defendants the commission of a criminal offense or several criminal offenses, and, thus, are actionable in themselves and subject Defendants who uttered and published them to a civil action for the defamation and defamation by implication.

67.    Such defamation and defamation by implication are based on false accusations against Plaintiffs of criminal activity, and, thus, constitute defamation *per se*.

68.    Further, such defamation and defamation by implication are by words and conduct, of statements, communications, or implication published to third persons, taken together as a whole, in full context, all of which are materially false, and constitute the accusation against Plaintiffs of contemptible and despicable words and conduct, and holding Plaintiffs up to hatred, scorn, contempt, and ridicule, and, as such, constitutes defamation *per se*.

69.    Further, as such defamation or defamation by implication was carried out by Defendants against Plaintiffs with malicious intent, or with reckless disregard for the whether such defamatory meaning were true, constitutes defamation *per se* against Plaintiffs.

70.    Despite proper notice, Defendants have failed and refused to retract such defamatory communications but, instead, have chosen only to repeat and intensify such defamatory communications, exacerbating substantially the resultant harm to Plaintiffs.

71.     Defendants published the statements to third persons with knowledge of the falsity of the statements or in reckless disregard of their truth or falsity.

72.     Defendants and others did, in fact, repeat and re-publish, in second waves, or third waves or more, the false and defamatory statements that Defendants initially and originally published to their respective and original, first-wave, audiences, and then re-published some or all of them, in part or in whole, in same, similar, modified, and in dissimilar form, supplemented, enlarged, or abridged, in whole or in part, with the intent to disseminate each re-publication or modified re-publication to different audiences to amplify their audiences.

73.     Defendants' publications and republications and the publications and re-publications made by others, of misstatements of fact attributed, have attributed, and continue to attribute to Plaintiffs characteristics, conducts, and beliefs that were false.

74.     Defendants repeatedly published and re-published in the same, similar, related, modified, or supplemental communications containing misstatements to large groups of third parties, who, in turn, re-published and repeated such misstatements to still more persons, constituting the multi-level generations and re-generations of publicity against Plaintiffs, diminishing and destroying Plaintiffs' reputation, esteem, and standing, on a mass basis.

75.     As a direct and proximate result of such wrongful conduct, Plaintiffs have suffered the injuries detailed above, both economic and non-economic,

including but not limited to actual damages, special damages, exemplary damages, and punitive damages, as well as costs and attorney fees so wrongfully sustained. Plaintiffs are especially entitled to exemplary damages because, despite due notice and the passage of a reasonable amount of time, Defendants have not published a retraction of the defamatory statements and implications and have acted with malice or with malice have failed to act.

76.     Defendants made the false and defamatory statements knowing, intending, or with the expectation that they would be re-published by some of those to whom Defendants originally published them.

77.     Defendants published the statements to third persons with knowledge of the falsity of the statements or in reckless disregard of their truth or falsity.

78.     Defendants and others did, in fact, repeat and re-publish, in second waves, or third waves or more, the false and defamatory statements that Defendants initially and originally published to their respective and original, first-wave, audiences, and then re-published some or all of them, in part or in whole, in same, similar, modified, and in dissimilar form, supplemented, enlarged, or abridged, in whole or in part, with the intent to disseminate each re-publication or modified re-publication to different audiences to amplify their audiences.

79.     Defendants' publications and republications and the publications and re-publications made by others, of misstatements of fact attributed, have attributed, and continue to attribute to Plaintiffs characteristics, conducts, and beliefs that were

21

false.

80.    Defendants repeatedly published and re-published in the same, similar, related, modified, or supplemental communications containing misstatements to large groups of third parties, who, in turn, re-published and repeated such misstatements to still more persons, constituting the multi-level generations and re-generations of publicity against Plaintiffs, diminishing and destroying Plaintiffs' reputation, esteem, and standing, on a mass basis.

81.    As a direct and proximate result of such defamation, Plaintiffs were injured and remain injured in their reputations, esteem, and standing in the community such that others have been thereby deterred or precluded from associating or dealing with Plaintiffs. As a direct and proximate result of such defamation, Plaintiffs were injured and remain injured in their property, business, and feelings, other non-economic injury, and other economic injury, including but not limited to attorney fees, court costs, and other expenses of litigation and suffered, have suffered, and continue to suffer such injuries and special injuries, and actual, exemplary, and special damages, entitling them to recover actual, exemplary, punitive, and special damages, which injuries include but are not limited to emotional distress, humiliation, mortification and embarrassment, sleeplessness, anxiety, dehumanization, beleaguerment, and other damages that may arise during the course of discovery and the course of this action up to and including at trial, including but not limited to the damages and injuries detailed above.

82.     Plaintiffs are further entitled to recover from Defendants, in addition to actual damages including attorney fees, exemplary damages inasmuch as Defendants have failed to honor Plaintiffs' due notice of retraction within a reasonable time, and inasmuch as Defendants' wickedness, malice, and malicious intent and conduct amplified and continues to amplify injury to Plaintiffs' feelings.

83.     Plaintiffs are entitled to recover exemplary damages in such amount so as to compensate Plaintiffs for incremental and increased injuries to Plaintiffs' feelings or increased injury to feelings attributable to their sense of indignation and outrage caused by Defendants' bad faith or ill will.

Therefore, Plaintiffs demand judgment against Defendants for actual, consequential, exemplary  and punitive damages in the full amount to which Plaintiffs are entitled, and Plaintiffs further request the entry of a decree for all equitable relief to which they are entitled, along with an award of costs and attorney fees so wrongfully sustained.

COUNT THREE
INVASION OF PRIVACY (FALSE LIGHT)

84.     Plaintiffs incorporate by reference as though fully set forth herein all averments above.

85.     The statements published by Defendants, knowingly, intentionally, with malice, recklessly,  in reckless disregard or indifference to whether they would cause harm, and carelessly, of or concerning Plaintiffs or falsely attributing to Plaintiffs

statements or conduct, including but not limited to those detailed herein, caused damage to Plaintiffs.

86.    Such statements and conduct of Defendants, including the numerous statements, innuendo, and acts of Defendants, acting alone or through others, directly or indirectly, detailed above and statements, including those detailed above, constitute an offensive invasion of privacy placing Plaintiffs in a false light by misstatement of facts.

87.    Defendants' publications and republications and the publications and re-publications made by others, of misstatements of fact attributed, have attributed, and continue to attribute to Plaintiffs characteristics, conduct, character, scruples, practices, habits, and beliefs that were false and placed Plaintiffs in a false position.

88.    Defendants repeatedly published and re-published in the same, similar, related, modified, or supplemental communications containing misstatements to a large group of third persons, who, in turn, repeated such misstatements to still more persons, constituting the multi-level generations and re-generations of publicity against Plaintiffs.

89.    Defendants' wrongful statements and conduct of or concerning Plaintiffs, or falsely attributing to Plaintiffs improper statements or conduct, have portrayed and have resulted in the portrayal or placement of Plaintiffs in a false light in the public eye.

90.    Such false light in which Defendants have placed Plaintiffs is highly

offensive to a reasonable person.

91.     Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiffs would be placed.

92.     As a direct and proximate result of such false light invasion of privacy practiced by Defendants against Plaintiffs, Plaintiffs have suffered damages and injuries including monetary loss, embarrassment, humiliation and mental pain that a person of ordinary sensibilities would have suffered.

93.     Plaintiffs are entitled to recover from Defendants actual damages and exemplary damages to recompense them for such injuries, as well as equitable relief appropriate in the premises, including but not limited to injunctive and declaratory relief.

Therefore, Plaintiffs demand judgment against Defendants for actual, consequential, and exemplary damages in the full to which Plaintiffs are entitled, and Plaintiffs further request the entry of a decree for all equitable relief to which they are entitled, along with an award of costs and attorney fees so wrongfully sustained.

## COUNT FOUR
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

94.     Plaintiffs incorporate by reference as though fully set forth herein all averments above.

95.    Defendants' conduct as detailed above was intentional. Defendants' conduct was extreme, malicious, extraordinary, vicious, sadistic, outrageous, spiteful, grotesque, deceitful, and of such character as not to be tolerated by a civilized society.

96.    Defendants' conduct caused Thomas severe emotional distress. As a direct and proximate result of Defendants' conduct, Thomas has suffered unthinkable mortification, humiliation, horror, embarrassment, internal discord, dehumanization, and loss of respect and personhood.

97.    As a direct and proximate result of Defendants' intentional infliction of emotional distress on Thomas, he has suffered and continue to suffer injury and damage, including mental and physical pain and illness, mental and physical suffering, emotional distress, mortification, terror, horror, severe apprehension, anxiety, depression, distraction and mental and physical impairment and disability, the inability to concentrate and enjoy his chosen livelihood of composing and creating and performing music, fear and fright, agitation, degradation, and a profound diminishment in his enjoyment of life and the loss of the ability to enjoy his professional, social, creative, and recreational life, and the enjoyment of all usual and ordinary aspects of life in the future.

Therefore, Plaintiffs demand judgment against Defendants for actual, consequential, and exemplary  damages in the full to which Plaintiffs are entitled, and Plaintiffs further request the entry of a decree for all equitable relief to which

they are entitled, along with an award of costs and attorney fees so wrongfully sustained.

COUNT FIVE
NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

98.    Plaintiffs incorporate by reference as though fully set forth herein all averments above.

99.    The acts and omissions of Defendants detailed above would naturally and probably result in emotional distress.

100.    Such conduct of Defendants as detailed above was done by Defendants in a manner and with a state of mind so reckless as to demonstrate a substantial lack of concern for whether an injury results.

101.    Alternatively, conduct was done by Defendants negligently or carelessly in disregard of, or with callous indifference to, Plaintiffs and the rights of Plaintiffs and as to whether Plaintiffs would suffer injury as a consequence of such conduct.

102.    Defendants breached their several duties to exercise due and reasonable care in conducting themselves as detailed above.

103.    As a direct and proximate result of such breaches by Defendants of duties owing to Plaintiffs, Plaintiffs have suffered severe emotional distress and mental injury, as detailed above.

104.   The acts and omissions of Defendants detailed above have caused, and continue to cause, Thomas to suffer severe emotional distress that has manifested itself in symptoms including but not limited to sleeplessness, increased anxiety, headaches, nausea, nightmares, cold sweats, loss of appetite, and such other injuries and physical manifestations.

105.   As a direct and proximate result of Defendants' negligent infliction of emotional distress upon Plaintiffs are detailed above, Plaintiffs have suffered emotional distress, mental pain and suffering, anguish, mortification, embarrassment, humiliation, loss of self-esteem, loss of the sense of peace and security, and all other physical and mental suffering described hereinabove.

Therefore, Plaintiffs demand judgment against Defendants for actual, consequential, exemplary  and punitive damages in the full amount to which Plaintiffs are entitled, and Plaintiffs further request the entry of a decree for all equitable relief to which they are entitled, along with an award of costs and attorney fees so wrongfully sustained.

COUNT SIX
CONCERT OF ACTION AND CIVIL CONSPIRACY

106.   Plaintiffs incorporate by reference as though fully set forth herein all averments above.

107.   Defendants acted tortiously, unlawfully, illegally, criminally, and in active concert with each other and with persons not named as parties in this action

28

but co-conspirators with Defendants, with such persons having knowledge of the improper and wrongful conduct, pursuant to a common design, including the commission of a conspiracy to injure and destroy Thomas, personally, by causing him mental and physical pain and suffering as well as severe emotional distress, and also in his business, and in his property, and to inflict economic injury on and destroy the Company, including but not limited to Defendants' hatching and carrying out against Plaintiffs their vicious, malicious, and wicked campaign to defame, discredit, and destroy Plaintiffs as detailed above, as well as all other tortious, wrongful, illegal, and unethical acts including but not limited to the conspiracy to violate, diminish, and destroy Plaintiffs' enjoyment of rights to which they are and have been fully entitled, and all other wrongful acts including those detailed herein.

108. Defendants combined to accomplish, by concerted action, a wrongful or unlawful purpose by lawful means, a lawful purpose by wrongful or unlawful means, or a wrongful or unlawful purpose by wrongful or unlawful means, to wit, the discrediting and maligning of Plaintiffs, by all means detailed above, among other things.

109. At all times pertinent to this action, Defendants engaged in the concerted activities against Plaintiffs as detailed above by express or implied agreement. Plaintiffs may have difficulty specifically identifying all the activities of Defendants and their co-conspirators due to the generic similarities of such activities as engaged in and promoted by Defendants, as detailed above.

110. Due to the concert of action among Defendants, each is liable to Plaintiffs for the injuries and damages detailed above, even if there was no direct relation to the conduct of one Defendant or co-conspirator.

111. Defendants are jointly, severally, and alternatively liable to Plaintiff for all injuries and damages detailed above.

112. Defendants illegally, unlawfully, criminally, maliciously, and wrongfully conspired with each other with the intent and for the illegal purpose of discrediting, intimidating, threatening, and inflicting emotional distress on Plaintiffs, and Defendants did, in fact, discredit, intimidate, threaten, and inflict emotional distress on Plaintiffs.

113. Defendants, in combination, conspired to commit such wrongful acts against Plaintiffs and did, in fact, commit such acts and did, in fact, realize the resultant accomplishment of their wrongful and unlawful purpose or purposes as detailed above.

114. This conspiracy resulted in the illegal, unlawful, or tortious activity of committing the tortious acts described herein, including but not limited to stalking and harassment (including cyberstalking and cyberharassment), and interference with business relationships and advantageous business expectancies, opportunities, advantages, and communications, and the infliction of emotional distress upon, Plaintiffs.

115. As a direct and proximate result of Defendants' conduct, including

Defendants' engaging in concert of action and civil conspiracy as detailed above, Plaintiffs have been injured and damaged as detailed herein.

116.   As a direct and proximate result of Defendants' conduct, including Defendants' engaging in concert of action and civil conspiracy as detailed above, Plaintiffs have suffered injury and damage, including mental pain and suffering, emotional distress, mortification, embarrassment, humiliation, and all other economic and non-economic injuries detailed above.

Therefore, Plaintiffs demand judgment against Defendants for actual, exemplary, and punitive damages in the fullest amount and to the fullest extent to which Plaintiffs are entitled, and Plaintiffs further request the entry of a decree for all equitable relief to which they are entitled, along with an award of costs and attorney fees so wrongfully sustained.

Respectfully submitted,

CRANBROOK LAW GROUP, P.C.

By   /s/ *Barry R. Powers*
      Barry R. Powers (P40589)
      Plaintiffs' counsel

DATED: September 16, 2025

VERIFICATION AND DECLARATION
OF THOMAS ANDREW SCHOENBERGER

I, Thomas Andrew Schoenberger, declare, under penalty of perjury that the foregoing is true and correct. Executed on September 16, 2025.

/s/ *Thomas Andrew Schoenberger*
Thomas Andrew Schoenberger

DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,

CRANBROOK LAW GROUP, P.C.

By   /s/ *Barry R. Powers*
Barry R. Powers (P40589)
Plaintiffs' counsel

DATED: September 16, 2025