UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS ANDREW SCHOENBERGER,
CICADA 3301 METAVERSE, L.L.C.
a Utah domestic limited liability company,
and THOMAS ANDREW SCHOENBERGER
doing business as CICADA 3301 TOKEN,
CICADA 3301 PORTALS, and SOPHIA MUSIK,

     Plaintiffs,

vs.                      Case No. 2:25-cv-12937-TGB-KGA

LISA ANNE DERRICK and
PAULA SUE DAVIS,

     Defendants.

_____/

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND (6)

## STATEMENT OF QUESTIONS PRESENTED

I.      Does the Court have personal jurisdiction over the out-of-state Defendants, neither of whom has purposely availed themselves of the laws and protections of the State of Michigan? A corollary to this question is whether the Defendants' successful jurisdictional defense of a Michigan state court action filed by the same Plaintiffs can be a basis for establishing personal jurisdiction?

II.      Does the judicial proceeding privilege apply to the affidavits filed by the Defendants in defense of Plaintiffs' state court action, which was dismissed for lack of personal jurisdiction?

## CONTROLLING OR APPROPRIATE AUTHORITY

1.      Question I (jurisdiction)

- Fed. R. Civ. P. 12(b)(2)

- Walden v Fiore, 571 US 277 (2014)

- Bristol-Myers Squibb Co v Superior Court of Cal.,
  592 US 351 (2017)

- Chrysler Corp. v Fedders Corp., 643 F2d 1229 (6th Cir., 1981)

2.      Question II (judicial proceeding privilege)

- Fed. R. Civ. P. 12(b)(6)

- Couch v Schultz, 193 Mich App 292 (1992)

- Oesterele v Wallace, 272 Mich App 260 (2006)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND (6)

### Introduction

Plaintiffs filed the instant suit against Defendants, after a prior suit against the same Defendants making similar claims was dismissed by the Wayne County Circuit Court for lack personal jurisdiction.  The Plaintiffs also claim in this case that the Defendants' affidavits filed in connection with their MSD in Wayne County constitute actionable torts.  For the reasons discussed in this motion, this action should be dismissed because personal jurisdiction over an individual defendant cannot be established where that person's only significant contact with the forum's state was related to the defense's a prior lawsuit (by the same Plaintiff) based on lack of personal jurisdiction.  Also, other than the claims based on the affidavits filed in Wayne County, all the claims here were raised, or could have been raised, in the prior suit.  Finally, the purported tort claims in this action based on the affidavits must fail because the Defendants are protected by the "judicial proceedings privilege".

1

## STATEMENT OF FACTS

The Plaintiffs in this case consist of Thomas Schoenberger, a self-proclaimed "preeminent, award-winning, and prolific composer, pianist and musician" (Complaint, PageID 2) and various private companies owned by him. Schoenberger and his entities are no strangers to litigation, having been involved in lawsuits in numerous states, including a Court of Claims action in the State of Michigan against Michigan State University, various professors and deans, and all members of the School's Board of Regents. See Schoenberger, et al vs. The Regents of Michigan State Univ., et al, Mich. Ct. of Claims, Case No. 2025-000045-NM.[1] Schoenberger also filed suit against the same Defendants named in the Court of Claims action plus several additional Defendants in the Wayne County Circuit Court. See Schoenberger, et al vs. The Regents of Mich. State Univ., et al, Wayne County Circuit Court Case No. 25-012153-CK (the "WC case"). Significantly, the Plaintiffs named Derrick and Davis as Defendants in the WC case, which was filed on August 7, 2025. The lengthy Complaint filed in the WC case focuses on a peer-reviewed academic paper co-written by MSU Professor Laura Dilley entitled "QAnon Propaganda on Twitter as

---

[1] Motions for summary disposition are pending on behalf of all Defendants in the Court of Claims action.

2

Information Warfare:  Influencers, Networks, and Narratives."  The WC Complaint alleges that Professor Dilley's publication impugned Schoenberger suggesting that he was "the master mind behind QAnon, that the Cicada 3301 alternate reality game (puzzle) is a direct link with QAnon, and that Thomas (Schoenberger) belongs to the 'IAM Cult'".  WC Complaint, ¶ 103 (Exhibit 1 (Wayne County Complaint).  The WC Complaint is a sprawling manifesto of grievances claiming that all the Defendants, including Defendants Derrick and Davis, were part of a grand conspiracy to injure Schoenberger and his companies.  For example, the WC Complaint states that Derrick acted "in concert with Dilley and others with knowledge of Dilley's illegal, unlawful, wrongful, tortious, unethical and improper conduct, malfeasance, misfeasance, and non-feasance as described herein."  WC Complaint, Exhibit 1, ¶ 69.  Similarly, the WC Complaint alleges that Defendant Davis did the same.  Id., ¶ 70.  The WC Complaint further states that Defendants Derrick and Davis were part of a circle of "former associates—turned detractors" of Schoenberger who were recruited by Professor Dilley "to foment additional false facts of and concerning Thomas [Schoenberger] to aid in her vicious campaign to discredit and destroy Thomas [Schoenberger]."  Id., ¶ 134 Exhibit 1.  The WC Complaint also refers to a YouTube broadcast of Defendant Davis' husband wherein

3

Professor Dilley appeared as a guest and made a comment stating, "Tommy Boy, stop being stupid." Id, ¶¶ 193-4. Similar allegations are made against Davis and Derrick in the instant case. See Plaintiff's Complaint, page ID 1 – 31.

Davis and Derrick responded to the WC case by hiring counsel in Michigan who filed an MSD based on lack of personal jurisdiction. Affidavits were filed in connection with that motion establishing that Davis and Derrick did not have any significant contacts with the State of Michigan. For her part, Derrick's affidavit provided a detailed account of her interactions with Schoenberger (none of which were in Michigan) and Professor Dilley. See Derrick WC Affidavit. Exhibit 2. Derrick's affidavit explained that her knowledge of Schoenberger came through the fact that they were both residents of California at certain times and Derrick dated Schoenberger's brother. In the interest of providing the circuit court with the full accounting her interactions with Schoenberger, Derrick's affidavit also attested to a sexual assault by Schoenberger, which she discussed on a podcast in 2020, and which resulted in an unwelcome contact from Schoenberger and people affiliated with him. *Id.* Derrick's affidavit established that none of her contacts with Schoenberger involved Michigan, and that she never intentionally availed herself to the laws and protections of

4

the State of Michigan, nor has she ever even visited the state. *Id.* Similarly, Davis' affidavit establishes that she is a resident of Indiana, who became acquainted with Schoenberger after "liking" one of his pieces of music on his website, after which she was contacted by Schoenberger. As with the affidavit of Derrick, Davis' affidavit established that she did not conduct business in Michigan and never purposely availed herself to the laws and protections of the State of Michigan. Her affidavit noted that she has never "stepped foot in the State of Michigan in connection with any communications with or about Schoenberger or any of his entities." Davis Affidavit, Exhibit 3, ¶ 18.

A hearing was conducted on the MSD in Wayne County Circuit Court on November 6, 2025, at which time Schoenberger, through counsel, made an extremely lengthy and vociferous argument claiming that Derrick and Davis had sufficient contacts with Michigan to justify personal jurisdiction over them. It was argued that part of the "conspiracy" included contact with a person in Bay City, Michigan named Robert Allen Sauerwald, whom Schoenberger claimed harassed and terrorized him through a YouTube channel that called "The Lone Cicada". The complaint in the instant case makes the same claims regarding Sauerwald. See Page ID 6 - 7.

5

After entertaining lengthy argument from Schoenberger's counsel, the Wayne County Circuit Court granted the MSD, finding that Derrick and Davis did not have sufficient or minimum contacts with the State of Michigan to support personal jurisdiction.  Subsequently, an order granting the MSD based on lack of personal jurisdiction was entered by the Court. See Exhibit 4.[2]

Everything in the instant complaint filed by the Plaintiffs was included in, or could have been included in, the WC case, except the new claims based on the affidavits filed by Davis and Derrick in the WC case.

## ARGUMENT

### I.  PERSONAL JURISDICTION OVER A DEFENDANT CANNOT BE ESTABLISHED WHERE THE DEFENDANTS' ONLY CONTACT WITH THE FORUM STATE WAS DEFENDING A PRIOR LAWSUIT BY THE SAME PLAINTIFF IN THAT STATE BASED ON LACK OF PERSONAL JURISDICTION

The Court Rules allow for a challenge to personal jurisdiction by way of a motion.  See Fed. R. Civ. P. 12(b)(2).  Federal due process requires that an out-of-state defendant have sufficient "minimum contacts" with the forum state such that the suit does not offend "traditional notions of fair play

---

[2] Following entry of this order, Schoenberger and his counsel filed a motion seeking to vacate that order falsely claiming that the trial judge (Hon. Martha Snow) admitted to being "biased."  That motion is pending with a hearing date set for March 19, 2026.

and substantial justice." <u>Bristol-Myers Squibb Co.</u> v <u>Superior Court of Cal.</u>, 592 US 351, 137 S. Ct. 1773, 1785 (2017) ("General jurisdiction exists only when the defendant's contacts with the forum state are so 'continuous and systematic' as to render them essentially at home in the forum state."); See, also, <u>Daimler AG</u> v <u>Bauman</u>, 571 US 117, 127 (2014). In assessing whether the defendant's contacts enable the court to exercise general jurisdiction, courts assess the nature and number of defendant's contacts. See, e.g. <u>Synthes (U.S.A.)</u> v <u>G.M. Dos Reis, Jr. Ind. Com. DE Equip. Medico</u>, 563 F.3d. 1285, 1297 (Fed. Cir. 209). Plainly, state and federal courts of Michigan do not have "general jurisdiction" over Davis and Derrick.

The next question is whether a court may exercise "specific jurisdiction" over a defendant, which focuses on the relationship "among the defendant, the forum and the litigation." <u>Walden</u> v <u>Fiore</u>, 571 US 277, 283-4 (2014) (quoting an earlier decision). To determine whether specific jurisdiction exists, the court must ask whether "(1) the defendant purposely directed its activities to the forum state; (2) the claims arise out of or relate to those activities (collectively, the minimum contacts prong); and (3) the assertion of jurisdiction is reasonable and fair." <u>Avocent Huntsville Corp.</u> v <u>ATEN Int'l Co.</u>, 552 F.3d. 1324, 1332 (Fed. Cir. 2008).

7

The Wayne County Circuit Court has already determined that the Plaintiffs failed to demonstrate sufficient "minimum contacts" with the State of Michigan to justify jurisdiction over these Defendants.  Even if notions of collateral estoppel are not extended to this determination[3], it should nevertheless be given significant weight by this Court.  The only "new facts" that have arisen since the Wayne County litigation was instituted are those relating to the defense of that case itself (including the affidavits).  Thus, the question becomes whether personal jurisdiction over a defendant can be established by showing that a defendant contested a prior action in the forum state (on jurisdictional grounds) filed by the same plaintiff.  The answer to this question must most assuredly be, "No".

Appearing in a forum state solely to contest jurisdiction does not constitute sufficient minimum contacts sufficient for personal jurisdiction in

---

[3] Some Federal Courts have applied the doctrine of collateral estoppel to prior state court rules regarding personal jurisdiction.  See, e.g., Smith v Ghana Com. Bank, Ltd., 2013 WL 12074959 *5 (D. Minn. 2013)("Generally, the doctrine of collateral estoppel applies to orders after a final judgment on the merits, however, it is also applicable to a court's prior decision that it lacks personal jurisdiction over a party."); Strassman v Essential Images, 2018 WL 1251636 (D. NJ, 2018)(applying collateral estoppel to prior ruling of another court on personal jurisdiction); White v RCS Recovery Services, LLC, 2017 WL 698774 (ND.WV, 2017)(applying collateral estoppel to prior court's ruling that West Virginia lacked personal jurisdiction over the Defendant).  All these unpublished cases are attached as Exhibit 5.

a subsequent lawsuit.  Davis and Derrick only appeared, through counsel, in Michigan, to contest the Wayne County case based on jurisdictional grounds.  They were successful in their efforts.  It would make little sense to allow a plaintiff to assert personal jurisdiction over a defendant on the basis that that defendant appeared in the forum state to contest a lawsuit filed by the same plaintiff.  Because this is an unusual fact pattern, there is a dearth of case law on this subject.  However, the case law that does exist supports the Defendants' position.

A case decided in the Eastern District of Texas held that "the prior appearance [of a party] did not necessarily waive the personal jurisdiction requirement in future actions, nor constitute related business conduct within the jurisdiction."  Wapp Tech Limited Partnership v Microfocus Int'l PLC, 406 F.Supp.3rd 585, 594 (ED TX, 2019)(quoting from an earlier case).  Federal courts recognize that a defendant must be able to challenge personal jurisdiction without thereby submitting to it.  In Gerber v Riordan, 649 F.3d. 514 (6th Cir. 2011), the Court explained that before the Federal Rules of Civil Procedure were adopted in 1938, defendants would make a limited or "special" appearance to challenge personal jurisdiction without submitting to the court's authority.  Rule 12 abolished the distinction between general and special appearances, allowing defendants to contest jurisdiction without

9

waiving their objections.  649 F3d at 521 (Moore, concurring).  In <u>Aldrich v Nat. Collegiate Assoc.</u>, 484 F. Supp. 3d. 779 (2020), the Court observed that "the plaintiff must still show that the defendant had sufficient contacts with the forum" because two prior "actions in the forum do not establish such contact."  484 F. Supp. 3d. at 792.

Personal jurisdiction requires that a defendant *purposely* avail herself to the laws and protections of a sister state.  Here, Derrick and Davis did not purposely avail themselves to Michigan when they were forced to defend a lawsuit brought against them by Schoenberger.  Moreover, the affidavits they filed in connection with their MSD in Wayne County were privileged documents filed in connection with that litigation.  Those affidavits were filed for the purpose of fully disclosing their relationships to Schoenberger and Prof. Dilley.  This was essential to show that none of their contacts with either Schoenberger or Dilley involved availing themselves to the benefits and protections of the State of Michigan.  While Schoenberger argues in his Complaint here that some allegations in the affidavits were unnecessary to contest jurisdiction, this argument is a non-starter.  The "judicial proceedings privilege" is to be "liberally construed so that participants in judicial proceedings are free to express themselves without fear of retaliation."  <u>Couch</u> v <u>Schultz</u>, 193 Mich App 292, 295 (1992).  "As a matter

10

of public policy, the balance is struck heavily in favor of the free disclosure of information during a judicial proceeding.  In order to achieve this balance, those who participate in the judicial process must be able to do so without the specter of potential of civil liability . . . hanging over their heads." Oesterele v Wallace, 272 Mich App 260, 267-8 (2006)(quoting from an earlier opinion).

### (a)  Plaintiffs' conspiracy theory of jurisdiction must fail

The Plaintiffs may argue jurisdiction over these out-of-state defendants under a conspiracy theory.  Under a conspiracy theory of jurisdiction, a Plaintiff must plausibly allege (1) the defendant was part of a conspiracy and (2) a co-conspirator performed a substantial act in furtherance of the conspiracy in Michigan.  See Chrysler Corp. v Fedders Corp., 643 F2d 1229, 1236-37 (6th Cir. 1981).  See also Charles Schwab Corp. v Bank of Am. Corp., 883 F3d 68, 87 (2nd Cir. 2018); Unspam Tech, Inc. v Chernuk, 716 F3d 322, 329 (4th Cir. 2013).  "[T]otally unsupported allegations of conspiracy cannot constitute sufficient contacts with Michigan to justify an exercise of personal jurisdiction." Chrysler Corp., supra, 643 F2d at 1237.  Bare allegations of "conspiracy" with an in-state person are insufficient to establish jurisdiction.  A plaintiff "must plead with particularity the conspiracy as well as the overt acts within the forum taken

11

in furtherance of the conspiracy." Unspam Tech., Inc., supra, 716 F3d at 329 (quoting an earlier opinion).

In the present case, the Wayne County Circuit Court has already rejected the Plaintiffs' conspiracy theory of jurisdiction. The general allegations of a "conspiracy" with Prof. Dilley and/or Mr. Sauerwald are plainly insufficient. Minimum contacts exist only when a defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law." Hanson v Denckla, 357 US 235, 253 (1958). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random', 'fortuitous', or 'attenuated' contacts." Burger King Corp v Rudzewicz, 471 US 462, 475 (1985). Assuming *arguendo* that Derrick and Davis had contact with Michigan residents as part of some grand scheme to tarnish Schoenberger, he still must show that they "aimed" their "conduct at the Forum State". Unspam Tech., supra, 716 F3d at 328 (quoting Calder v Jones, 465 US 783, 789 (1984).

There is no plausible evidence to support the conspiracy theory of jurisdiction. Neither Derrick nor Davis have "aimed" their alleged conduct at Michigan. Any contact with Michigan was, at best, "random, fortuitous, or attenuated", which is insufficient to establish personal jurisdiction. Like

12

the Wayne County Circuit Court, this Court too should reject Plaintiffs' conspiracy theory of jurisdiction.

In summary, the Wayne County Circuit Court has already determined that courts in Michigan lack personal jurisdiction over Davis and Derrick. The only new development since the Wayne County ruling consists of Plaintiffs' allegations that the affidavits filed in connection with the MSD support the text claims in the present complaint. This ignores the fact that those affidavits are subject to absolute privilege and that they were filed only to defend (on jurisdictional grounds) against the Plaintiffs' WC lawsuit.

## II. THE PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE AFFIDAVITS FILED BY THE DEFENDANTS IN THE WAYNE COUNTY SUIT ARE SUBJECT TO JUDICIAL PROCEEDINGS PRIVILEGE[4]

The gravamen of Plaintiff's Complaint here relates to statements made in the affidavits filed by Derrick and Davis in the WC case. Plaintiffs claim that Derrick's affidavit, referencing the sexual assault in the 1990s and the subsequent harassment following a 2020 podcast interview, constitute part of a conspiracy to "wickedly, falsely and maliciously" harm the Plaintiffs. See Plaintiffs' Complaint, paragraphs 37 – 40 (PageID 9-12). As

---

[4] This argument, under Fed. R. Civ. P. 12(b)(6), is included in an abundance of caution. If the Court rules in favor of the Defendants on the jurisdictional argument, the Court will not need to address this secondary argument.

13

for Davis, Plaintiffs claim that her affidavit asserting that, she had a mental breakdown after becoming acquainted with Schoenberger was part of the conspiracy to harm the Plaintiffs.  See, e.g. Plaintiffs' Complaint, PageID 12-13.

As a result of the affidavits filed in the WC case, Schoenberger asserts various tort claims:   abuse of process (Count I), defamation per se (Count II), invasion of privacy/false light (Count III), intentional infliction of emotional distress (Count IV), negligent infliction of emotional distress (Count V), and civil conspiracy (Count VI).

The affidavits and other documents filed by Derrick and Davis in defense of the WC case fall squarely within the judicial proceedings privilege.  It is well established that "statements made during the course of judicial proceedings . . . are absolutely privileged." Couch v Schultz, 193 Mich App 292, 294 (1992).  "[I]mmunity extends to every step in the proceeding and covers anything that may be said in relation to the matter at issue, including pleadings and affidavits." Oesterle, supra, 272 Mich App at 265.  Even "[f]alsity or malice on the part of the witness does not abrogate the privilege." Maiden v Rozwood, 461 Mich 109, 134 (1999).  Moreover, Michigan courts have expanded the privilege beyond defamation claims, applying it to other causes of action.  See, e.g. Maiden, supra, 461 Mich App

14

at 117 (negligence claims), <u>Dabkowski</u> v <u>Davis</u>, 364 Mich 429, 432 – 433 (1961) (intentional torts), <u>Meyer</u> v <u>Hubbel</u>, 117 Mich App 699, 710 – 711(1982) (tortious interference).

The statements made in defense of the Plaintiffs' WC action fall within the wide berth afforded created by the judicial proceedings privilege. Courts have observed that that privilege is to be liberally construed so that parties to proceedings do not have to second guess what they say in defense of a case out of fear that such statements will result in a subsequent lawsuit. See, e.g. <u>Couch</u>, <u>supra</u>, at 295. See also, <u>Oesterle</u>, 272 Mich App at 265– 268.

The affidavits of Davis and Derrick were written to forthrightly disclose the relationships between them and Schoenberger, and Professor Dilley, in order to show they did not have any substantial connections to Michigan that in any way related to the claims made in the lawsuit. Davis and Derrick should not have been in a position where they were required to second guess whether to include information relating to their relationship with Schoenberger in their affidavits out of fear that Schoenberger would later claim that particular statements were not germane to the defense, therefore subjecting them to tort liability. Requiring the litigant to second guess whether to include information is the very ill that the judicial

15

proceedings privilege was intended to avoid.  As stated in <u>Couch</u>, <u>supra</u>, "participants in judicial proceedings [should be] free to express themselves without fear of retaliation."  193 Mich App at 295.

In summary, the only "new facts" that have come into play since the Plaintiffs filed their Wayne County action on August 7, 2025, are those relating to the very defense of that action.  However, the statements and filings made in defense of that action are all subject to the judicial proceedings privilege, which should result in dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(6).

### <u>CONCLUSION/RELIEF REQUESTED</u>

This action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) (personal jurisdiction) and/or (6) (failure to state a claim).

Respectfully submitted,

<u>/s/Michael S. Cafferty</u>
MICHAEL S. CAFFERTY
Michael S. Cafferty & Assoc., P.C.
Attorney for Defendants
333 West Fort Street Ste 1400
Detroit, MI  48226
(313) 964-3070
mcaffe@aol.com
P36613

Dated:   March 4, 2026

16