# EXHIBIT 5

2013 WL 12074959
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.

Theo SMITH, Plaintiff,
v.
GHANA COMMERCIAL
BANK, LTD., Defendant.

Civ. No. 13–1010 (DWF/JJK)
|
Signed 08/08/2013

### Attorneys and Law Firms

Theo Smith, 2200 W. 66th Street #218, Minneapolis, MN 55423, pro se.

Juan C. Basombrio, Esq., and F. Matthew Ralph, Esq., Dorsey & Whitney LLP, counsel for Defendant.

### REPORT AND RECOMMENDATION

JEFFREY J. KEYES, United States Magistrate Judge

### INTRODUCTION

**\*1** This matter is before this Court for a Report and Recommendation on the following motions: (1) Defendant's Motion to Strike or Dismiss the Complaint for Plaintiff's violation of this Court's Injunction Order (Doc. No. 7); (2) Defendant's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction (Doc. No. 7); and (3) Plaintiff's Motion to Remand (Doc. No. 6.). *See* 28 U.S.C. § 636, D. Minn. LR 72.1. For the reasons that follow, this Court recommends that Defendant's motions be granted in part and denied in part, Plaintiff's motion be denied, and that this case be dismissed without prejudice.

### BACKGROUND

This lawsuit involves yet another episode in Plaintiff's repetitive litigation against Defendant revolving around the claim that he lost many millions of dollars in some shady business dealings in the Republic of Ghana. Each previous complaint Plaintiff has filed against Defendant has challenged this Court to decipher an array of disjointed claims. The current *pro se* Complaint is no different, and this Court has struggled to interpret just what Plaintiff asserts. Although the Complaint here states a number of new causes of action, the substance of Plaintiff's allegations are the same as his three prior lawsuits against Defendant Ghana Commercial Bank ("GCB").

### I. The First Lawsuit

In March 2007, Plaintiff, Theo **Smith** ("Smith"), commenced his first action against GCB and the Republic of **Ghana**. *Smith v. Ghana Commercial Bank*, Civ. No. 07–1447 (DWF/AJB), Doc. No. 34 (D. Minn. June 11, 2007) ("*Smith I*"). In that case, United States District Judge Donovan W. Frank questioned whether Smith had properly served GCB, but ultimately dismissed the action without prejudice for lack of personal jurisdiction. (Doc. No. 34 at 4–8.)

### II. The Second Lawsuit

In his second suit, **Smith** again sued the Republic of **Ghana** and GCB. *Smith v. Ghana Commercial Bank*, Civ. No. 08–5324 (ADM/JJK) (D. Minn. Oct. 1, 2008) ("*Smith II*"). In this second lawsuit, United States District Judge Ann D. Montgomery dismissed the suit with prejudice on the ground that Smith failed to properly serve either party. *Smith II*, Civ. No. 08–5324 (ADM/JJK), Doc. No. 63 at 11 (D. Minn. Oct. 13, 2009). On appeal, the Eighth Circuit affirmed the dismissal order, but remanded the case so that the dismissal could be entered "without prejudice." *Smith v. Ghana Commercial Bank*, 379 Fed.Appx. 542, 543 (8th Cir. June 14, 2010) (unpublished). In its *per curiam* opinion, the Eighth Circuit stated: "[b]ecause Smith has filed multiple meritless actions in the District of Minnesota raising similar claims, we remand to the district court to determine whether and, if so, the extent to which Smith should be precluded from filing additional claims in that court or in the United States." *Id.* Upon remand, Judge Montgomery considered the issue, but ultimately declined to enter an injunction against Smith. *Smith II*, Civ. No. 08–5324 (ADM/JJK), Doc. No. 74 at 1 (D. Minn. July 19, 2010).

### III. The Third Lawsuit

Then, in November 2010, **Smith** filed his third suit against GCB. *Smith v. Ghana Commercial Bank, et al.*, Civ. No. 10–4655 (DWF/JJK) (D. Minn. Nov. 18, 2010) ("*Smith III*"). In this third case, Judge Donovan W. Frank again dismissed the action for lack of personal jurisdiction over GCB. The Court also enjoined Smith from filing any suit against GCB relating to the subject matter of the third lawsuit unless he obtained prior leave of court. This Court's Report and Recommendation, which Judge Frank adopted, stated that "[n]either Defendants nor the Court should be subjected to the burden of a fourth suit involving these allegations." *Smith III*, Civ. No. 10–4655 (DWF/JJK), Doc. No. 74 at 36 (D. Minn. June 18, 2012).

### IV. This Lawsuit

***2** Smith originally brought this suit against GCB on April 2, 2013, in Hennepin County District Court. (Doc. No. 1, ¶ 1.) On April 29, 2013, GCB removed the case to federal court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

Plaintiff's current allegations against GCB are nearly identical to those in each prior action. His story begins in September 1999, when either money or an undefined "consignment" belonging to Plaintiff, accumulated from the sale of gems and precious metals, arrived in Ghana. (*See* Doc. No. 1, Attachment 1, Compl. ¶ 29.) The currency was "security coated," and Plaintiff brought a sample back to the United States to have it examined by three separate institutions in Minnesota: the Minneapolis Police Department, the Federal Reserve System of Minneapolis, and the United States Secret Service. (*Id.* ¶¶ 30–32.)

In April 2001, Plaintiff contracted a "certified zonal agent" to complete paperwork for the requisition of equipment and supplies to process $18 million in the removal of the security coating described above. (*Id.* ¶ 32.) Plaintiff asserts that he paid $75,000 for this processing and requisition. (*Id.*) Plaintiff then states that the processed money was returned to him, but the zonal agent "used arm of might to seize the consignment" to extort Plaintiff of his funds. (*Id.* ¶ 40.) Apparently there was only one copy of the document certifying title to the consignment, and the zonal agent took possession of it. (*Id.* ¶ 41.) Though not stated in the Complaint, it seems this lack of title led to GCB denying Plaintiff access to these assets.

In August 2001, someone named "Mr. Robert, who has a principal-agent relationship with GCB, received sketchy information" about the consignment and contacted Plaintiff to ask if he had "any information about the consignment." (*Id.* ¶¶ 43–45.) Plaintiff then gave Mr. Robert a detailed report and requested assistance in recovering the consignment. (*Id.* ¶ 45.) Acting upon this report, Mr. Robert phoned the zonal agent who brought the consignment to Mr. Robert's office, where Plaintiff inspected the consignment. (*Id.* ¶¶ 48–49.) Plaintiff then witnessed Mr. Robert sign a paper granting "him" (it is unclear whether "him" refers to Plaintiff or Mr. Robert) custody over the consignment (*Id.* ¶ 51), and Mr. Robert then delivered the consignment to GCB's vault. (*Id.* ¶ 52.)

In July 2002, Plaintiff met with Mr. Robert and Mr. Williams, "a senior level manager ... of Ghana Commercial Bank," regarding release of the funds, but to no avail. (*Id.* ¶¶ 54–55.) Then, Plaintiff apparently received a receipt of deposit showing $45 million "stamped with the official stamp of the bank" with the slip naming "Royal Crown Securities and Deposits" as the "account name." (*Id.* ¶¶ 58–61.) Plaintiff made several visits to GCB from July 2003 to March 2004 in which he apparently verified the account number, but was unable to obtain release of the funds. (*Id.* ¶¶ 64–65.) After these trips Plaintiff was informed by GCB that "someone had contacted the bank inquiring about the account." (*Id.* ¶ 65.) Plaintiff then "personally visited the Circle Branch of Ghana Commercial Bank" where he showed a bank administrator the deposit receipt and later received a report "of all that had ... taken place during Plaintiff's bank visitation." (*Id.* ¶¶ 66–68.) Based on these facts, Plaintiff now, for the fourth time, asserts a host of confusing causes of action against GCB.

### DISCUSSION

### I. DEFENDANT'S MOTION TO DISMISS OR STRIKE

#### A. Dismissal for Violation of Court Order

***3** GCB first argues that by filing this lawsuit, Plaintiff violated the pre-filing injunction issued in *Smith III*. The injunction barred Plaintiff from filing

any subsequent suit based upon the facts alleged in *Smith III* against GCB without first obtaining leave of court. But Plaintiff has not filed a subsequent lawsuit against GCB *in this court.* Plaintiff filed the action in state court, and GCB later removed this case to federal court. Therefore, for Plaintiff to be in violation of this Court's Order, the pre-filing injunction must extend to state court filings.

GCB fails to cite any meaningful authority that would allow this Court to conclude that its inherent power to issue a pre-filing injunction extends to state court filings. Further, research of relevant case law gives little guidance on the matter, and this Court is skeptical that any federal court may, while acting under its inherent power to control its own docket, compel a state court to do the same through a pre-filing injunction of the type issued in *Smith III.* As a result, this Court does not recommend dismissal of this suit as a violation of the *Smith III* injunction.

However, Plaintiff should not take this decision as an indication that he has found a way around the pre-filing injunction issued in *Smith III.* Plaintiff appears to believe that, by filing in state court, he has found a way to pursue his claims against GCB outside of the purview of that injunction. Given Plaintiff's *pro se* status, this Court feels obligated to warn Plaintiff that if he continues this vexatious litigation, given that there is diversity jurisdiction between the parties, GCB will always have a right to remove the action to this Court. *See* 28 U.S.C. § 1441; 28 U.S.C. § 1446. If Plaintiff continues this vexatious litigation, he will very likely be subject to state or federal monetary sanctions. *See* Fed. R. Civ. P. 11 (permitting a court to issue monetary sanctions when a action is frivolous, legally unreasonable, or without factual foundation, or is brought for improper purpose); Minn. R. Civ. P. 11 (same). Plaintiff should heed these warnings and cease his continued filing of frivolous lawsuits—whether in state court or federal court—that expend valuable court resources and subject GCB to costly litigation fees.

Although this Court does not recommend dismissal for violation of the *Smith III* injunction, it does recommend dismissal for a different reason: this case is barred by collateral estoppel as to personal jurisdiction.

## B. Collateral Estoppel as to Personal Jurisdiction

### 1. Legal Standard

GCB argues that this Court must dismiss Plaintiff's complaint under the doctrine of collateral estoppel as to personal jurisdiction. (Doc. No. 9, 5–6.) Collateral estoppel is a branch of the doctrine of res judicata that serves both judicial and private interests in the termination of litigation. *Oldham v. Pritchett,* 599 F.2d 274, 278 (8th Cir. 1979). The doctrine safeguards a defendant from unnecessary expense and potential harassment by lawsuit in being forced to litigate matters that have already been decided. *Id.* The term "collateral estoppel" may "comprehend a number of more specific doctrines," including issue preclusion, which is the estoppel applicable in this case. *Robinette v. Jones,* 476 F.3d 585, 589 (8th Cir. 2007).

Issue preclusion provides that "when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in another lawsuit." *United States v. Brekke,* 97 F.3d 1043, 1049 (8th Cir. 1996) (citations omitted). In the Eighth Circuit, issue preclusion has five elements:

> *\*4 (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.*

*Robinette*, 476 F.3d at 589 (quoting *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1273 (8th Cir. 1997)).

There is no doubt that the parties are the same in this case as in the previous three lawsuits. *Compare* **Smith III** *with* **Smith v. Ghana Commercial Bank et. al.**, Civ. No. 13–1010 (DWF/JJK) (D. Minn.). Also, the parties litigated this issue in *Smith III*. There, the parties submitted briefs and actively disputed the issue of personal jurisdiction. Furthermore, this Court discussed the issue of personal jurisdiction over GCB at length in its opinion. Therefore, analysis of the preclusive effects of this Court's prior determination that it lacks personal jurisdiction over GCB turns on elements 2, 4, and 5.

### a. The Personal Jurisdiction Issue in This Case is the Same as the Issue in *Smith III*.

As *Pohlmann* indicated, where a court has dismissed an action for lack of personal jurisdiction "the adjudicated jurisdictional facts will be given preclusive effect, and any attempt by plaintiff to file a second suit ... will result in a quick dismissal, *unless* critical jurisdictional facts have changed in the interim." *Pohlmann v. Bil–Jax, Inc.*, 176 F.3d 1110, 1113 (8th Cir. 1999) (emphasis in original). In *Pohlmann*, the Eighth Circuit reversed a federal court dismissal on the basis of collateral estoppel as to personal jurisdiction because there was a substantial time period between the first and second case that resulted in a change of essential jurisdictional facts. *See id.* In doing so, the court opined "collateral estoppel does not preclude relitigating a jurisdictional issue when subsequent events ... alter the legal rights or relations of the litigants." *Id.* at 1113 (quotations omitted).

This case is easily distinguishable from *Pohlmann*. Here, there is no suggestion that the factual basis for personal jurisdiction has changed between the order of dismissal in *Smith III* and the initiation of this case. As noted above, the factual allegations in this Complaint and those in *Smith III* are nearly identical. *Cf. Deckert v. Wachovia Student Fin. Servs., Inc.*, 963 F.2d 816, 819 (5th Cir. 1992) (dismissing a plaintiff's claims under the doctrine of collateral estoppel because the parties

had litigated the jurisdictional issue in a previous suit and jurisdictional facts had not changed in the interim.) Plaintiff does make a few broad assertions revolving around personal jurisdiction; however, none of these allegations indicate that jurisdictional facts have *changed* from the time that *Smith III* was dismissed. Plaintiff's general assertions that GCB (1) conducts internet banking; (2) issues lines of credit to corporations that do business in Minnesota; or (3) that GCB hired a Minnesota law firm and came to Minnesota in order to litigate *Smith III* are all jurisdictional facts that existed when *Smith III* was decided. (*See* Doc. No. 1, Attach. 1, Compl. ¶¶ 91–96.) Plaintiff also asserts that the Court can reexamine the issue of personal jurisdiction since he has alleged legal causes of action in this case that are different from his previous lawsuits. But Plaintiff's addition of new forms of recovery do not provide an opportunity to re-open the issue because the factual underpinnings of his claims remain the same. *See Valdez v. Kreso, Inc.*, 144 F. Supp. 2d 663, 667 (N.D. Tex. 2001) (finding that collateral estoppel precludes the relitigation of a jurisdictional issue even if a new theory of recovery is added so long as the asserted theories arise from the same nucleus of operative facts).

**\*5** Plaintiff's Complaint neither demonstrates that there has been any change to this Court's previous jurisdictional analysis nor represents any new factual information that would indicate to this Court that subsequent events have changed the jurisdictional issue. As a result, this Court concludes that the Complaint presents the same jurisdictional issue as that presented in *Smith III*.

### b. In *Smith III*, This Court Rendered a Valid and Final Judgment as to Personal Jurisdiction Over GCB that was Essential to Its Decision.

Issue preclusion may only attach where the issue of fact or law is determined by a valid and final judgment, and the determination is essential to the judgment. *Arizona v. California*, 530 U.S. 392, 414 (2000); *see also* Restatement (Second) of Judgments § 27 (stating that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment ... the determination is conclusive in a subsequent action between the parties, whether on the same or a different

claim."). Generally, the doctrine of collateral estoppel applies to orders after a final judgment on the merits; however, it is also applicable to a court's prior decision that it lacks personal jurisdiction over a party. *See Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525-526 (1931) (finding that adjudication of personal jurisdiction issue precludes relitigation of the same issue); *see also Pohlmann*, 176 F.3d at 1112 (noting that an issue actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties). In this manner, a jurisdictional determination may act as a final judgment for preclusion purposes despite the fact that it is a non-merits dismissal.

From his Memorandum in Support of Remand, Plaintiff appears to believe that he has another chance to litigate the jurisdictional issue in state court. (*See* Doc. No. 6, ¶ 8.) But this Court already reached a final judgment on the question of jurisdiction. In *Smith III*, the issue was not only litigated, but this Court discussed personal jurisdiction at length in its opinion and ultimately dismissed the case for lack of personal jurisdiction over GCB. Upon disposition of that issue, the decision—as to jurisdiction—became valid and final. *See Deckert*, 963 F.2d at 819 (finding that an order dismissing claims for lack of personal jurisdiction precludes relitigation of the jurisdictional issue). While other issues for dismissal were raised in *Smith III*, jurisdiction remains a threshold question and must be answered before the court can reach the merits. *Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007). As a result, the determination that this Court lacked personal jurisdiction over GCB was essential to the prior judgment in *Smith III*.

## 2. Conclusion

In sum, this Court finds that all of the criteria for collateral estoppel have been satisfied by the Order of Dismissal in *Smith III*. Plaintiff had a full and fair opportunity to litigate the issue. Here, Plaintiff fails to demonstrate that the circumstances have changed or assert any new factual allegations pertaining to personal jurisdiction that were not available at the time that *Smith III* was decided. As a result, this Court recommends that this case be dismissed because

Plaintiff is precluded from relitigating the issue of personal jurisdiction under the doctrine of collateral estoppel.

## II. Lack of Personal Jurisdiction

*6 Even if we assume that Plaintiff is not precluded from relitigating the issue of personal jurisdiction, this Court would conclude that it lacks personal jurisdiction over GCB and the case must, therefore, be dismissed.

*Smith I*, Plaintiff's first suit, was based on substantially similar allegations to those in his current Complaint. *Smith I* was dismissed for lack of personal jurisdiction. Then, in *Smith III*, this Court again addressed the issue of the Court's personal jurisdiction over GCB in depth. In *Smith III*, Plaintiff failed to make any allegations that showed that GCB purposefully availed itself of the privilege of conducting activities in Minnesota. The *Smith III* complaint did not set out "any relation between contacts GCB may have with Minnesota and the Plaintiff's claims in this case." *Smith III*, Civ. No. 10–4655 (DWF/JJK), Doc. No. 74 at 30 (D. Minn. June 18, 2012). As a result, this Court found it could not exercise general or specific jurisdiction over GCB. Plaintiff's current Complaint asserts a number of broad allegations pertaining to GCB's contacts with Minnesota, each of which fail to establish personal jurisdiction.

### A. Legal Standard

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)) (alterations in *Dever*). "A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Id.* at 1073 (quoting *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991)). The Minnesota long-arm statute permits a court to exercise jurisdiction to the same extent as the United State's Constitution, so this Court applies the federal standards. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995); *Valspar*

v. *Lukken Color Corp.*, 495 N.W. 408, 411 (Minn. 1992) (courts apply the federal standards to most personal jurisdiction questions in Minnesota).

"Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Dever*, 380 F.3d at 1073 (quoting *Burlington Indus.*, 97 F.3d at 1102) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)). The defendant must have engaged in some conduct or have some connection with the forum state such that the defendant should reasonably anticipate being haled into court there. *World–Wide Volkswagen*, 444 U.S. at 297. In other words, the defendant must purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

There are two types of personal jurisdiction: general and specific. "When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 648 (8th Cir. 2003). "However, if the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction." *Id.* General jurisdiction exists when a defendant has "contacts with the state [that] are continuous and systematic." *Id.* Further, those continuous contacts with the forum must be such that the defendant is "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011).

*7 Under either general or specific personal-jurisdiction analysis, a court considers five factors to measure whether minimum contacts exist and whether the exercise of jurisdiction is reasonable: "(1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties."

*Dever*, 380 F.3d at 1073–74. A court gives significant weight to the first three factors. *See id.*

**B. Analysis**

Taking the facts Plaintiff alleges in the light most favorable to him, Plaintiff does not describe any contact or connection between GCB and the State of Minnesota that would allow this Court to assert personal jurisdiction over GCB. In the Complaint, Plaintiff makes three broad assertions as to why GCB should be subject to personal jurisdiction in Minnesota: (1) GCB conducts internet banking; (2) GCB issues lines of credit to corporations that do business in Minnesota; and (3) that GCB hired a Minnesota law firm and came to Minnesota in order to litigate *Smith I*. (*See* Doc. No. 1, Attach. 1, Compl. ¶¶ 91–96.)

In each of these broad allegations, Plaintiff does not allege that GCB's contact relates to his cause of action or alleged injury. To the contrary, the Complaint indicates that Plaintiff's injury took place in the Republic of Ghana. As a result, Plaintiff must establish that GCB's contacts with the forum are so great as to justify general personal jurisdiction over GCB. Each of Plaintiff's broad allegations are far too attenuated a basis to establish the requisite "continuous and systematic" contacts for general personal jurisdiction. As a result, Plaintiff has failed to make a *prima facie* showing that GCB is subject to either general or specific jurisdiction in the State of Minnesota. Therefore, this Court lacks personal jurisdiction over GCB.

**III. PLAINTIFF'S MOTION TO REMAND**

Because this Court recommends that GCB's motion to dismiss be granted, on the basis that this Court lacks jurisdiction over GCB, Plaintiff's motion to remand is moot. Therefore, this Court recommends that Plaintiff's motion be denied. However, given that Plaintiff is *pro se* this Court explains why Plaintiff's motion should be denied on its merits as well.

Title 28 U.S.C. § 1441 authorizes removal of civil actions from state court to federal court when a state-court action could have been brought, originally, in federal court. *Lincoln Property Co. v. Roche*, 126 S.Ct. 606, 608 (2005). One of those circumstances is known as diversity jurisdiction. *See* 28 U.S.C. § 1441.

Case 2:25-cv-12937-TGB-KGA ECF No. 17-6, PageID.254 Filed 03/04/26 Page 8 of 26

Smith v. Ghana Commercial Bank, Ltd., Not Reported in Fed. Supp. (2013)

Under diversity jurisdiction, where the parties to a suit are of "diverse" citizenship—each party is from a different state or the case involves a citizen's complaint against a non–U.S. citizen—the suit may be brought in federal court. *Id.* "When federal-court jurisdiction is predicated on the parties' diversity of citizenship ... removal is permissible only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action [was] brought." *Id.* (quotations omitted). Plaintiff appears to believe because this lawsuit involves causes of action that arise under state law then the case should remain in state court. However, diversity jurisdiction concerns the citizenship of the parties, not the claims asserted in a complaint. Here, removal is proper because GCB is not a citizen of Minnesota. GCB is a foreign corporation with citizenship in the Republic of Ghana. As a result, unless circumstances change, GCB will always have a right to remove a case filed in Minnesota state court by a Minnesota citizen, such as Plaintiff, to federal court.

## IV. DEFENDANT'S REQUEST FOR SANCTIONS

### A. Legal Standard for Rule 11 Sanctions

**\*8** In its Motion to Dismiss and supporting Memorandum of Law, GCB has asked this Court to issue an order for Plaintiff to show cause why sanctions should not be awarded in favor of the GCB for filing a duplicative and frivolous lawsuit in violation of this Court's pre-filing injunction issued in *Smith III*. (Doc. No. 7, ¶ 3.) Specifically, GCB seeks reimbursement of its attorney's fees and costs.

Federal Rule of Civil Procedure 11 provides that sanctions may be imposed when a complaint is frivolous, legally unreasonable, or without factual foundation, or is brought for improper purpose. Fed.R.Civ.P. 11. "Rule 11 makes sanctions mandatory when a violation of the Rule occurs, but whether a violation has occurred is a matter for the court to determine, and this determination involves matters of judgment and degree." *O'Connell v. Champion*, 812 F.2d 393, 395 (8th Cir. 1987). When determining whether a Rule 11 violation has occurred, the Court "must apply an objective reasonableness standard to determine whether the pleading was frivolous, groundless, or advanced for an improper purpose."

*Pulaksi County Republican Comm. v. Pulaski County Bd. of Election Comm'rs*, 956 F.2d 172, 173 (8th Cir. 1992).

This Court recognizes that Plaintiff is untrained in the law; however, his *pro se* status does not exempt him from complying with the requirements of Rule 11. *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987) ("Rule 11 allows the district court to impose sanctions whenever a plaintiff has filed a frivolous lawsuit."); *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (noting that *pro se* litigants are not excused from complying with procedural law). To the contrary, Rule 11 applies to *pro se* litigants. *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993).

### B. Applicability of Sanctions in This Case

Plaintiff's *pro se* status cannot absolve him from sanctions where he continuously files suits that are frivolous or brought for improper purpose, namely, to harass GCB. Indeed, "[f]ederal courts have a clear obligation to exercise their authority to protect litigants from such behavior." *In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988). Based on Plaintiff's history of litigating this dispute with GCB, this Court is convinced that this fourth suit constitutes a duplicative, frivolous filing that is sanctionable under Rule 11.

A frivolous lawsuit is one which has "no legal basis, often filed to harass or extort money from the defendant." *Black's Law Dictionary* 1572 (9th ed. 2009). There is no doubt that the Complaint in this case is duplicative: it involves nearly identical allegations as those contained in Plaintiff's three prior suits against GCB. Plaintiff has been warned—in *Smith I* and *Smith III*—that there is neither general nor specific jurisdiction over GCB in the State of Minnesota, but nonetheless, he continues to file nearly identical claims against GCB. In *Smith I*, Judge Frank determined that this Court lacked personal jurisdiction over GCB because Smith failed to allege any facts that would allow the Court to exercise personal jurisdiction. In *Smith III*, after the parties litigated the issue of personal jurisdiction again, Judge Frank reached the same conclusion. As noted above, Plaintiff does not allege any new facts that would alter the personal-jurisdiction analysis. Plaintiff's insistence on continuing to sue GCB based on the same facts that were alleged in three prior dismissals constitutes harassment. The

Case 2:25-cv-12937-TGB-KGA  ECF No. 17-6, PageID.255  Filed 03/04/26  Page 9 of 26

Smith v. Ghana Commercial Bank, Ltd., Not Reported in Fed. Supp. (2013)

sheer similarities between Plaintiff's Complaint and the complaint in *Smith III* indicate that Plaintiff has no good-faith expectation of prevailing against GCB.

**\*9** This Court concludes that Smith has engaged in frivolous litigation in light of the fact that he continues to file the same claims against GCB even after this Court's pre-filing injunction in *Smith III* and three prior dismissals of nearly identical claims. As a result, Rule 11 sanctions are warranted.

### C. Type of Sanctions Warranted

Having concluded that Plaintiff's lawsuit violates Rule 11 it is necessary to determine what type of sanctions are warranted. *See O'Connell v. Champion*, 812 F.2d at 395 (noting that sanctions are mandatory when a court finds that a Rule 11 violation has occurred). Rule 11 applies to all court civil proceedings, including civil actions removed from state court. *Willy v. Coastal Corp.*, 503 U.S. 131, 134 (1992). The purpose of Rule 11 sanctions is "to deter attorney and litigant misconduct." *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994). This Court imposes Rule 11 sanctions only to the extent necessary to deter future litigation conduct that warrants the sanction. Fed.R.Civ.P. 11(c)(4) (stating that a sanction under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated").

Smith has already been subject to Rule 11 sanctions in the form of the pre-filing injunction issued in *Smith III*, and it did not deter him from filing the same lawsuit again, albeit in state court. In *Smith III*, this Court declined to impose monetary sanctions upon Plaintiff —despite finding that his filings were duplicative and frivolous—because it felt that the injunction would adequately deter Plaintiff from continuing to engage in sanctionable conduct. The Report and Recommendation stated: "this Court concludes that the recommended litigation injunction should adequately deter Plaintiff ... therefore, [the Court] recommends denying Defendants' Motion to the extent it seeks an order to show cause why Plaintiff should not be sanctioned further." *Smith III*, Civ. No. 10–4655 (DWF/JJK), Doc. No. 74 at 37–38 (D. Minn. June 18, 2012). However, that injunction and the warnings this Court gave in that decision did not deter Smith from filing what is essentially the same suit against GCB.

Without monetary sanctions this Court believes that Smith will continue to harass GCB with future lawsuits. This fruitless litigation forces GCB to expend needless money and time defending against frivolous claims. Furthermore, it wastes the Court's valuable time in adjudicating meritless allegations that have already been put to rest in previous litigation. Based on Plaintiff's harassment of GCB and his continued filing of suits that both lack merit and are outside of the jurisdiction of this Court, we recommend that an Order to Show Cause be issued under Rule 11 concerning the payment of attorney's fees and costs.

### D. Defendant's Request for Contempt Proceedings

GCB also requests contempt judgments be entered against Plaintiff for violating this Court's pre-filing injunction issued in *Smith III*. The purpose of civil contempt proceedings is to vindicate the rights of another party for the contemnor's violation of the court's order. *Int'l Union, United Mine Workers of America v. Bagwell*, 144 S.Ct. 2552, 2557 (1994). As noted above, GCB failed to cite any meaningful authority to show that Plaintiff's filing in state court, and GCB's subsequent removal to federal court, put Plaintiff in violation of this Court's pre-filing injunction. Because GCB has failed to show that Plaintiff violated the injunction, this Court does not recommend contempt proceedings against Plaintiff.

### RECOMMENDATION

**\*10** Based upon the above, and upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss (Doc. No. 7, ¶ 2), be **GRANTED IN PART** and **DENIED IN PART** based on the following:

   a. The motion should be granted to the extent it seeks dismissal on the basis of collateral estoppel as to personal jurisdiction;

   b. The motion should be granted to the extent that it requests Plaintiff be ordered to show cause why he

should not be sanctioned for filing a duplicative and frivolous lawsuit;

c. The motion should be denied to the extent that it requests this Court to bring contempt proceedings against Plaintiff for violating the pre-filing injunction issued by this Court in *Smith v. Ghana Commercial Bank et al.*, Civ. No. 10–4655 (DWF/JJK) (D. Minn.);

2. Defendant's Motion to Strike (Doc. No. 7, ¶ 1), be **DENIED AS MOOT**;

3. Plaintiff's Motion to Remand (Doc. No. 6), be **DENIED AS MOOT**; and

4. This action be **DISMISSED WITHOUT PREJUDICE**.

**All Citations**

Not Reported in Fed. Supp., 2013 WL 12074959

 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 1251636
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Jordan STRASSMAN, in his capacity as trustee
of the Robert H. Strassman Revocable Trust
and in his individual capacity, and The Robert
H. Strassman Revocable Trust, Plaintiffs,
v.
ESSENTIAL IMAGES, d/b/a Essential Images
Fine Art and Antique Appraisal Service, John W.
Rockafellow, and Sally Rockafellow, Defendants.

Civ. No. 2:17–cv–4227–KM–JBC
|
Signed 03/09/2018
|
Filed 03/12/2018

**Attorneys and Law Firms**

Lawrence M.A. Centanni, Law Office Of Lawrence M.
Centanni, P.C., Elizabeth, NJ, for Plaintiffs.

Matthew Adam Green, Obermayer Rebmann Maxwell
& Hippell LLP, Cherry Hill, NJ, Samantha Jane
Koopman, Obermayer Rebmann Maxwell & Hippel
LLP, Philadelphia, PA, Eric Barry Levine, Lindabury,
McCormick & Estabrook, Esqs., Westfield, NJ, for
Defendants.

**OPINION**

KEVIN MCNULTY, United States District Judge

**\*1** Plaintiffs Jordan Strassman and the Robert H.
Strassman Revocable Trust allege that they engaged
defendants Essential Images, John W. Rockafellow,
and Sally Rockafellow, to appraise and sell personal
and Trust property. Plaintiffs claim that defendants
have failed to provide an accounting of sales and have
not forwarded sale proceeds. Plaintiffs first brought
an action in the Superior Court of New Jersey, where
the Judge dismissed all claims by the Trust for lack of
personal jurisdiction and all of Strassman's personal
claims for failure to state a claim. Plaintiffs then
filed this federal court action. Now before the court
is defendants' motion to dismiss the complaint on

grounds of collateral estoppel [1] and failure to state a
claim.

**I. BACKGROUND** [2]

**A. Factual History**

Plaintiff Jordan Strassman ("Strassman"), a New
Jersey resident, is the trustee of the Robert H.
Strassman Revocable Trust ("Trust"), whose situs is
in Virginia. (Compl. ¶¶ 9–10). Strassman contacted
defendant Essential Images, a "fine arts and antique
appraisal service" based in Littlestown, Pennsylvania
and Washington, D.C., to sell Trust assets as well
as his personal property. (Compl. ¶¶ 11, 22–23).
Strassman had several phone conversations with John
W. Rockafellow ("Rockafellow"), a Pennsylvania
resident who owns or works for Essential Images.
(Compl. ¶¶ 12, 23). Sally Rockafellow, too, is a
Pennsylvania resident who owns or works for Essential
Images. (Compl. ¶ 13).

On October 8, 2012, Rockafellow traveled to Virginia
to review and inventory the Trust property. (Compl.
¶ 24). Rockafellow valued the property and stated
prices that he could sell items for. (Compl. ¶ 24). On
October 23, 2012, Strassman retained Essential Images
to complete the appraisal of Trust property. (Compl. ¶¶
24–25). Pursuant to the agreement, Essential Images
would keep a twenty percent commission on the total
sale. (Compl. ¶ 27). Essential Images would send the
Trust sale proceeds within ten days and communicate
sales and inventory information to Strassman. (Compl.
¶ 27). If any items were not sold within 120 days, they
would be returned to the Trust within seven working
days thereafter. (Compl. ¶ 27).

**\*2** Rockafellow took items from the Trust's Virginia
property to Pennsylvania and Washington, D.C. for
sale. (Compl. ¶¶ 33–34). Strassman alleges that
Rockafellow took possession of items that were not
part of the agreement and failed to inventory certain
items. (Compl. ¶¶ 28–31). At that time, Rockafellow
represented that he had sold several items. (Compl.
¶ 37). Rockafellow also provided Strassman with a
detailed receipt that showed each item sold, the value
of each sale, the total dollar volume for the day,

Strassman v. Essential Images, Not Reported in Fed. Supp. (2018)

Essential Images' commission, and the net amount due to the Trust. (Compl. ¶ 37).

After the Virginia transactions, Strassman agreed that Rockafellow would travel to New Jersey to appraise and sell the personal property of Strassman and his parents. (Compl. ¶¶ 35–36). On December 18, 2012, representatives of Essential Images came to New Jersey to Strassman's parents' residence, Strassman's storage unit, and Strassman's residence to collect personal property for sale. (Compl. ¶ 36). Strassman asked Rockafellow whether they needed to form a separate agreement or contract. (Compl. ¶ 36). Rockafellow said, "You are covered by the original contract. You signed it personally." (Compl. ¶ 36).

Later, Rockafellow told Strassman he had sent an email that listed the items sold. (Compl. ¶ 39). Strassman had not received the email and verified his email address. (Compl. ¶ 39). Rockafellow forwarded a "test" email, which Strassman confirmed receiving. (Compl. ¶ 39). Strassman still did not receive an accounting of the items sold. (Compl. ¶ 39). Rockafellow explained that his computer system was not working. (Compl. ¶ 39).

On April 29, 2013, Strassman sent Rockafellow an email that stated, "I still have not received any of the e-mails" and therefore "have no idea what has or has not been sold so far." (Compl. ¶ 39). Rockafellow responded that everything had been sold except for the camera equipment and the trailer. (Compl. ¶ 40). Rockafellow then stated, "I have the trailer sold ... I have buyers for most of the other pieces from the house ... I am working on finalizing the sale of the garage equipment." (Compl. ¶ 41). In June 2013, Rockafellow sent an email to Strassman that stated, "The sale that I'm having with your camera equipment is on the weekend starting on the 28th ... I've had a lot of interest so far and believe it will all sell." (Compl. ¶ 42).

Strassman continued to request that Rockafellow send him checks from the sale proceeds. (Compl. ¶ 43). Rockafellow left a voicemail in July 2013 stating that someone from Essential Images would send him a check as soon as possible. (Compl. ¶ 43). In September 2013, Rockafellow sent Strassman an email that stated, "I am working on your estate and will get a check out to you sometime this week." (Compl. ¶ 43).

Rockafellow also told Strassman by phone that he would send a check immediately. (Compl. ¶ 43).

After months of not receiving checks, Strassman sent a written demand for payment. (Compl. ¶ 44). Essential Images has represented that almost all of the items were sold and that Strassman should have received an accounting for those sales. (Compl. ¶ 45). Strassman has still not received an accounting of the property transferred to defendants or checks for the sales of the property. (Compl. ¶¶ 46–47). Essential Images and Rockafellow have failed to communicate with Strassman about the status of the property. (Compl. ¶ 47).

## B. New Jersey Superior Court Action

On June 2, 2016, plaintiffs filed an action in the Superior Court of New Jersey, asserting claims against Essential Images, John W. Rockafellow, and Sally Rockafellow. (Def. Ex. B). The complaint included eight counts under New Jersey law for alleged violations of the New Jersey Consumer Fraud Act, breach of contract, violations of good faith and fair dealing, misrepresentation, common law fraud, promissory estoppel, conversion, conspiracy to commit a tort, and aiding the commission of a tort. (Def. Ex. B).

*3 On September 30, 2016, Judge Camille M. Kenny of the Superior Court of New Jersey dismissed plaintiffs' complaint, with prejudice, as to all claims by the Robert H. Strassman Revocable Trust. (Def. Ex. C). At the motion hearing, Judge Kenny stated that New Jersey courts did not have personal jurisdiction over the claims arising from the Trust. (PL Ex. A).

Judge Kenny dismissed Strassman's personal claims against defendants without prejudice; she would have permitted Strassman to submit a new complaint to pursue causes of action on his own behalf. (Def. Ex. C). Plaintiffs filed a motion for reconsideration, which was denied by Judge Kenny on November 18, 2016. (Def. Ex. D).

## C. Filing in Federal Court

On June 12, 2017, Strassman and the Trust filed this action in federal court against Essential Images, John W. Rockafellow, and Sally Rockafellow. (Compl.). The complaint alleges thirty counts under New Jersey, Pennsylvania, Virginia, and Washington, D.C. law.

Under New Jersey law, plaintiffs allege violations of the New Jersey Consumer Fraud Act, breach of contract, violation of good faith and fair dealing, misrepresentation, common law fraud, promissory estoppel, conversion, breach of quasi-contract, breach of fiduciary duty, conspiracy to commit a tort, and aiding the commission of a tort. (Compl. ¶¶ 48–98). Under Pennsylvania law, plaintiffs allege violations of the Pennsylvania Unfair Trade Practice and Consumer Protection Law, breach of contract, unjust enrichment, breach of fiduciary duty, common law fraud, conversion, and conspiracy. (Compl. ¶¶ 99–127). Under Virginia law, plaintiffs allege violations of the Virginia Consumer Protection Act, breach of contract, common law fraud, negligent misrepresentation, conversion, and breach of quasi-contract. (Compl. ¶¶ 128–155). Under Washington, D.C. law, plaintiffs allege breach of contract, violation of good faith and fair dealing, negligent misrepresentation, common law fraud, unjust enrichment, breach of fiduciary duty, and violations of the District of Columbia Consumer Protection Procedures Act. (Compl. ¶¶ 156–88).

Defendants have moved to dismiss this action on the grounds of collateral estoppel. They argue that the New Jersey Superior Court's dismissal bars plaintiffs from relitigating the issue of personal jurisdiction. In the alternative, defendants claim that this complaint does not fulfill basic pleading requirements because it fails to differentiate Strassman's individual claims from those asserted on behalf of the Trust. (Def. Br. 1–2, 6–13). Plaintiffs argue in the alternative that if collateral estoppel prevents them from relitigating the issue of personal jurisdiction, the action should be transferred to an appropriate venue. (Pl. Br. 22–23).

## II. LEGAL STANDARD
Issue preclusion "prevents parties from relitigating an issue that has already been actually litigated." *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). "[T]he principle is simply that later courts should honor the first actual decision of a matter that has been actually litigated." 18 Wright & Miller, *Federal Practice*

& *Procedure* § 4416 (3d ed. 2016). This doctrine ensures that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979); *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979); *Burlington N. R.R. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995).

*\*4 A district court sitting in diversity applies the collateral estoppel rules of the state in which it sits. *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). In New Jersey,

> Collateral estoppel, which is also known as issue preclusion, prohibits relitigation of issues if its five essential elements are met. Those elements are that (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Allen v. V & A Bros., Inc.*, 26 A.3d 430, 444 (N.J. 2011) (citations omitted).

The underlying principles of issue preclusion include securing peace for the parties and promoting the court's efficient resolution of claims. *see Allen v. McCurry*, 449 U.S. 90, 94 (1980). Thus issue preclusion is concerned with "the defendant's interest in avoiding the burdens of twice defending a suit," and also "the

avoidance of unnecessary judicial waste." *Arizona v. California*, 530 U.S. 392, 412–13 (2000) (citing *United States v. Sioux Nation of Indians*, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)). Moreover, as the first Justice Harlan long ago explained, issue preclusion is necessary for courts to function as effective tribunals:

> This general rule is demanded by the very object for which civil courts have been established, which is to secure tile peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue, and actually determined by them.

*S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 49 (1897).

### III. DISCUSSION

Defendants claim that, as to the claims on behalf of the Trust, the issue of personal jurisdiction has already been conclusively decided by the Superior Court of New Jersey and cannot be relitigated here. Defendants also argue that Strassman's individual claims fail to state a claim upon which relief may be granted.

### A. Collateral Estoppel/Personal Jurisdiction

In a diversity action such as this, the law of the state in which the district court sits determines whether a nonresident defendant is subject to the court's personal jurisdiction. *see DeJames v. Magnificence Carriers,*

*Inc.*, 654 F.2d 280, 284 (3d Cir. 1981); *Database Am. v. Bellsouth Advert. & Publ'g Corp.*, 825 F. Supp. 1195, 1207 (D.N.J. 1993). Accordingly, this court applies New Jersey law to decide questions of personal jurisdiction. Personal jurisdiction in New Jersey is governed by New Jersey Court Rule 4:4-4, the New Jersey long-arm statute. Judge Kenny of the New Jersey Superior Court dismissed the state-court complaint regarding all claims from the Virginia-based Trust, finding that the Superior Court lacked personal jurisdiction over claims arising from the Trust.

*5 I first analyze whether Judge Kenny's prior determination that the New Jersey Superior Court lacks personal jurisdiction over defendants (regarding the Trust's claims) precludes that issue from being relitigated. As discussed in Part II, a collateral-estoppel analysis involves five essential elements: (1) whether the issue to be precluded is identical to the issue decided in the prior proceeding; (2) whether the issue was actually litigated in the prior proceeding; (3) whether the court in the prior proceeding issued a final judgment on the merits; (4) whether the determination of the issue was essential to the prior judgment; and (5) whether the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding. *see Allen v. V & A Bros., Inc.*, 26 A.3d 430, 444 (N.J. 2011) (citations omitted).

#### i. Identical Issue

In the prior proceeding, Judge Kenny of the Superior Court of New Jersey dismissed, with prejudice, the claims involving the Virginia-based Trust for lack of personal jurisdiction. In this action, the plaintiffs again assert claims on behalf of the Trust (and Strassman). The identical issue is presented—whether New Jersey can exercise personal jurisdiction over claims arising from defendants' interactions with the Trust.

This court explained in *Kitces v. Wood* that principles of collateral estoppel apply to the issue of personal jurisdiction just as they do to other issues:

> The principles of collateral estoppel apply with equal force to a prior determination by

a court that it lacks personal jurisdiction over a party. Therefore, once a New Jersey state court has concluded that it lacks personal jurisdiction over a party, that jurisdictional issue cannot be relitigated in this Court.

917 F. Supp. 338, 341 (D.N.J. 1996); *see also Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525–26 (1931) (adjudication of personal jurisdiction issue precludes subsequent relitigation of same issue).

The New Jersey Supreme Court has identified several factors to consider when evaluating the similarity of issues for purposes of collateral estoppel:

In deciding the similarity of issues for issue preclusion purposes, a court should consider whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related.

*First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 921 A.2d 417, 424 (N.J. 2007) (citations omitted). First, in this case, the arguments and evidence regarding personal jurisdiction are substantially the same. Second, it is clear that the governing rules of law are identical: "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted); *see also Braman v. Mary Hitchcock Mem'l Hosp.*, 631 F.2d 6, 8 (2d Cir. 1980) (holding that "[t]he district court correctly considered itself to be bound by the state

court construction of the long-arm statute"). Third, any jurisdictional discovery ordered by the Superior Court of New Jersey would parallel or encompass any jurisdictional discovery ordered by this court. *see Wallace v. Keystone Printed Specialties Co., Inc.*, No. 14–cv–5978, 2016 WL 5403088, at *5 (D.N.J. Sept. 27, 2016); *see also I Five 0, Inc. v. A. Schulman, Inc.*, No. 99–cv–354E(SC), 2000 WL 744003, at *2 (W.D.N.Y. June 5, 2000). Finally, the claims asserted are closely related. While the federal-court complaint contains more detailed factual allegations and alleges violations of different states' laws, the same factual circumstances underlie both complaints. The underlying wrong sounds in conversion and fraud.

*6 The issue on this motion, then, is the same issue decided by Judge Kenny in the prior action. The first element of collateral estoppel has been satisfied.

#### ii. Actually Litigated in the Prior Proceeding

The issue of personal jurisdiction was actually litigated in the Superior Court action. New Jersey courts have looked to the Restatement (Second) of Judgments in defining when an issue is "actually litigated" for purposes of collateral estoppel: an issue is actually litigated "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Allesandra v. Gross*, 453 A.2d 904, 909 (N.J. Super. Ct. App. Div. 1982) (quoting Restatement (Second) of Judgments § 27(d)). "[A]n issue may be submitted and determined on a motion to dismiss." *Id.* (quoting Restatement (Second) of Judgments § 27(d)); *see also Wallace*, 2016 WL 5403088, at *5–6.

The issue of personal jurisdiction was presented to the Superior Court of New Jersey, the court held a hearing on the issue, and then it dismissed the claims arising from the Trust for lack of personal jurisdiction. The second element of collateral estoppel is thus satisfied.

#### iii. Final Judgment on the Merits

While a dismissal for lack of jurisdiction generally is not "an adjudication on the merits," *see* Fed. R. Civ. P. 41(b) and N.J. Ct. R. 4:37–2(d), courts take

a more flexible view of finality in the context of collateral estoppel. *see Wallace*, 2016 WL 5403088, at *6. "Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable." *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991). "[T]he doctrine of collateral estoppel applies whenever an action is 'sufficiently firm to be accorded preclusive effect." *Id.* (citing *Hills Dev. Co. v. Twp. of Bernards*, 510 A.2d 621, 652 (N.J. 1986) (quoting Restatement (Second) of Judgments § 13) ). Indeed, "[f]inality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts." *Id.* (citation and internal quotation marks omitted). In short, an action does not proceed to a final judgment after it has been dismissed for lack of personal jurisdiction; such a dismissal is as "final" as it is ever going to be.

In this case, Judge Kenny's order dismissing the Trust's claims for lack of personal jurisdiction is "sufficiently firm" to preclude this court from questioning the previously litigated issue. *see Wallace*, 2016 WL 5403088, at *6–7; *Kitces*, 917 F. Supp. at 341–42; *see also* Wright & Miller, 18A *Federal Practice & Procedure* § 4436 (3d ed. 2017) ("Dismissal for want of personal jurisdiction precludes relitigation of the same issue of jurisdiction ...."). Nothing in the order suggests that the dismissal for lack of personal jurisdiction was tentative or subject to change. The hearing transcript shows that Judge Kenny entered that dismissal "with prejudice." Accordingly, the third element of collateral estoppel is met.

### iv. Essential to the Prior Judgment

The determination that New Jersey courts cannot exercise personal jurisdiction over the Trust-based claims was essential to the prior state-court judgment. Judge Kenny dismissed the Trust-based claims precisely and solely because she found that the court lacked personal jurisdiction over those claims. *see Wallace*, 2016 WL 5403088, at *7. Therefore, the fourth element of collateral estoppel is satisfied.

### v. Identity of Parties

*7 The fifth element requires that "the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Allen*, 26 A.3d at 444. Here, "the part[ies] against whom the [collateral estoppel] doctrine is asserted" are the plaintiffs. The orders and complaints filed in the Superior Court of New Jersey make clear that the plaintiffs in the state action are the same as the plaintiffs in this federal suit. The fifth element of collateral estoppel is therefore satisfied.

### vi. Fairness Considerations

I find that the miscellaneous "fairness factors," *see Allen*, 26 A.3d at 445, also weigh in favor of applying collateral estoppel here. The fairness factors include the conservation of judicial resources; avoidance of repetitious litigation; and the prevention of waste, harassment, uncertainty, and inconsistency. *Id.* First, applying collateral estoppel in this instance conserves judicial resources by preventing the court from engaging in an analysis of personal jurisdiction. Second, it avoids repetitious litigation. The defendants should not have to defend another lawsuit in New Jersey federal court when the initial suit was dismissed from New Jersey state court for lack of personal jurisdiction. Third, applying the doctrine prevents any potential inconsistencies between the state and federal courts. Other fairness factors include whether

> the party against whom preclusion is sought could not have obtained review of the prior judgment; the quality or extent of the procedures in the two actions is different; it was not foreseeable at the time of the prior action that the issue would arise in subsequent litigation; and the precluded party did not have an adequate opportunity to obtain a full and fair adjudication in the prior action.

*Id.* There is no indication that the plaintiffs could not have appealed Judge Kenny's prior judgment.[3] The parties were able to avail themselves of the procedures and hearings in the state court system. Moreover, the parties foresaw that the issue of personal jurisdiction would arise in the federal court context. Plaintiffs were concerned at the motion for reconsideration stage that the state-court dismissal would have preclusive effect on a future federal-court suit. (Pl. Ex. A. 17:20–23). They argue that Judge Kenny did not want to—and did not believe that she would—bind the federal court with her determination.[4] By that, she seems to have meant nothing more controversial than that the federal court would decide for itself whether it was bound. At any rate, Judge Kenny decided the issue of personal jurisdiction and this same issue is brought before this court. It has already been determined and this court will respect the prior determination.

**\*8** All five of the collateral-estoppel elements have been met and the fairness factors weigh in favor of the application of that doctrine. Therefore, I find that plaintiffs are precluded from asserting that this Court may exercise personal jurisdiction over plaintiffs with regard to the Trust-based claims.

### vii. Out-of-Circuit Case Law

Plaintiffs cite two out-of-circuit cases for the proposition that a prior state-court **ruling** on **personal jurisdiction** does not have **collateral-estoppel** effect. Those cases are distinguishable and do not dictate a similar result here.

First, in *Pohlmann v. Bil–Jax, Inc.*, the Eighth Circuit found that a Missouri appellate-court determination "that the trial record did not establish the trial court's personal jurisdiction over [defendant]" was not a jurisdictional finding of lack of personal jurisdiction. 176 F.3d 1110, 1113 (8th Cir. 1999). In this case, by contrast, the state trial court explicitly ruled, at a merits hearing, that New Jersey courts lacked personal jurisdiction over the Trust-based claims. *Pohlman* was also complicated by an issue over whether the court possessed jurisdiction over the person of the defendant at the time the suit was commenced in 1993, as opposed to the date of commencement of the

second action in 1997. *Id.* at 1112. No such change of circumstances has been identified or is likely in this matter, where the plaintiffs filed the Superior Court action on June 2, 2016 and the federal court action on June 12, 2017. (Def. Ex. B; Compl.).

Second, in *Barrett v. Tema Development (1988), Inc.*, the Southern District of New York denied collateral estoppel because it found that the state-court and federal-court actions were based on different causes of action and had different underlying facts. 463 F. Supp. 2d 423, 428 (S.D.N.Y. 2006). Thus in state court the plaintiff alleged conversion, but in federal court alleged breach of contract and breach of fiduciary duty. *Id.* Here, when filing in this Court, the plaintiffs added claims under other states' laws, but they retained the same New Jersey claims and did not allege different facts. There is nothing to indicate that the additional causes of action involved different jurisdiction-creating facts with respect to New Jersey.

### B. Change of Venue

Plaintiffs argue in the alternative that if Judge Kenny's order estops them from asserting the Trust-based claims against defendants, this court should transfer this action to an appropriate venue that does possess jurisdiction. (Pl. Br. 22–23). I agree.

Title 28, United States Code § 1406 permits transfers to cure defects:

> (a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Moreover, 28 U.S.C. § 1631 provides:

> Whenever a civil action is filed in a court as defined in

section 610 of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed ..., and the action ... shall proceed as if it had been filed in ... the court to which it is transferred on the date upon which it was actually filed in ... the court from which it is transferred.

**\*9** Thus the court has the power to transfer the action to another federal district court if the action originally could have been brought there, and if it finds such a transfer to be in the interest of justice. *see Chicosky v. Presbyterian Med. Ctr.,* 979 F. Supp. 316, 319–20 (D.N.J. 1997); *see also Goldlawr, Inc. v. Heiman,* 369 U.S. 463 (1962) (where plaintiff had accidentally filed suit in wrong district and statute of limitations had run, interest of justice required transfer pursuant to section 1406, rather than dismissal and finding that section 1406(a) exists to "remove whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits"); *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 284 (3d Cir.1994) (if plaintiff on remand could not establish personal jurisdiction, district court should consider whether transfer under sections 1406 or 1631 is appropriate); *I Five 0, Inc. v. A. Schulman. Inc.,* No. 99–cv–354E(SC), 2000 WL 744003, at \*2–3 (W.D.N.Y. June 5, 2000).

The court will transfer this case to the Middle District of Pennsylvania.

First, the action originally could have been brought there. Essential Images is domiciled in Littlestown, located in Adam County, which is within the Middle District of Pennsylvania. (Compl. ¶ 11). John W. Rockafellow and Sally Rockafellow are also residents of Pennsylvania (although the locality is not further specified).[5] (Compl. ¶¶ 12–13). Per 28 U.S.C. § 1391(b), venue is appropriate in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

Second, a transfer, as opposed to dismissal, is in the interest of justice. A transfer may avoid potential problems under applicable statutes of limitations that would not have arisen if the action had been originally filed in Pennsylvania. The Pennsylvania Unfair Trade Practice and Consumer Protection Law, for example, has a six-year statute of limitations. *see Gabriel v. O'Hara,* 534 A.2d 488, 496 (Pa. 1987). Pennsylvania also permits a plaintiff to employ theories of estoppel (or fraudulent concealment) to extend other applicable statute of limitations. *see Fine v. Checchio,* 870 A.2d 850, 860 (Pa. 2005).[6]

In addition, the defendants are located in Pennsylvania. The costs of prosecuting and defending the action are not likely to rise significantly for the parties involved if the action is transferred there. And finally, there is no indication that the filing in New Jersey was anything other than a good faith mistake. *see Chicosky,* 979 F. Supp. at 321–22.

Therefore, since it appears that the action could have been filed in Pennsylvania in the first instance, and that a transfer would be in the interest of justice, this action will be transferred to the Middle District of Pennsylvania.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs cannot relitigate here whether New Jersey courts can exercise personal jurisdiction over defendants regarding the Trust-based causes of action. That issue is barred by collateral estoppel. In the interest of justice, this case will be transferred to the Middle District of Pennsylvania.

**\*10** An appropriate order accompanies this opinion.

## All Citations

Not Reported in Fed. Supp., 2018 WL 1251636

Strassman v. Essential Images, Not Reported in Fed. Supp. (2018)

## Footnotes

1   I use the phrases "issue preclusion" and "collateral estoppel" throughout this opinion "interchangeably to refer to the rule ... providing the preclusive effect to a fact, question, or right determined in a prior case." *Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1231 n.2 (3d Cir. 1995).

2   All facts and inferences are made in favor of the nonmoving party on a motion to dismiss. Citations to the record are abbreviated as follows:

"Compl." = Complaint (ECF No. 1)

"Def. Br." = Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Complaint (ECF No. 8)

"Def. Ex. B" = Complaint in Strassman v. Essential Images, Superior Court of New Jersey (ECF No. 8–2)

"Def. Ex. C" = Order in Strassman v. Essential Images, Superior Court of New Jersey (ECF No. 8–3)

"Def. Ex. D" = Motion for Reconsideration Order in Strassman v. Essential Images, Superior Court of New Jersey (ECF No. 8–4)

"Pl. Ex. A" = Transcript of November 28, 2016 Motion Hearing on Motion for Reconsideration, Strassman v. Essential Images, Superior Court of New Jersey (ECF No. 13–1)

3   Plaintiffs claim that the Superior Court order was an "interlocutory order," but the order dismissed all of the claims in the case. (The Trust-based claims were dismissed for lack of personal jurisdiction and Strassman's personal claims were dismissed for failure to sufficiently plead). Although Strassman had leave to amend his personal claims, he was not required to do so; he could have rested on his complaint and appealed from the order of dismissal. The matter could have been appealed to the Appellate Division. *See, e.g., Baanyan Software Servs., Inc. v. Kuncha*, 81 A.3d 672 (N.J. Super. Ct. App. Div. 2013); *Jacobs v. Walt Disney World, Co.*, 707 A.2d 477 (N.J. Super. Ct. App. Div. 1998).

4   Judge Kenny stated at the motion hearing, "I don't bind Federal Courts. The Federal Judges will do as they see fit. If they have a question about New Jersey law, they will certify it over to much higher authorities than me." (Pl. Ex. A. 17:20–23).

5   *See* Court Locator Results, United States Courts, http://www.uscourts.gov/court-locator/city/Litdestown/state/PA/court/district (showing that Littlestown, PA is located in the Middle District of Pennsylvania). Plaintiffs suggest transfer to the Eastern District of Pennsylvania (Pl. Br. 22–23), but they do not plead any facts suggesting that Essential Images, John W. Rockafellow, or Sally Rockafellow is a resident of that district.

6   The U.S. District Court for the Middle District of Pennsylvania may, of course, make its own determination on a more complete record regarding the statute of limitations. *see Chicosky*, 979 F. Supp. at 321.

Strassman v. Essential Images, Not Reported in Fed. Supp. (2018)

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 698774
Only the Westlaw citation is currently available.
United States District Court, N.D. West Virginia.

Kenneth A. WHITE, Plaintiff,

v.

RCS RECOVERY SERVICES LLC,
FIA Card Services, Wells Fargo Bank,
and Lorain National Bank, Defendants.

CIVIL ACTION NO. 1:15CV140
|
Signed 02/22/2017

**Attorneys and Law Firms**

Kenneth A. White, Joint Base MDL, NJ, pro se.

Robert L. Bandy, Kay, Casto & Chaney, PLLC, Bryant J. Spann, Joseph K. Merical, Thomas Combs & Spann, PLLC, Charleston, WV, Jeremy Cook Hodges, Matthew D. Patterson, Nelson Mullins Riley & Scarborough LLP, Columbia, SC, for Defendant.

## MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 61]

IRENE M. KEELEY, UNITED STATES DISTRICT JUDGE

*1 Pending before the Court is the Report and Recommendation entered by Magistrate Judge Michael J. Aloi, as well as the objections filed by the pro se plaintiff, Kenneth A. White ("White"). For the reasons that follow, the Court **ADOPTS** the R&R, **OVERRULES** White's objections, and **DISMISSES** his claims **WITH PREJUDICE.**

## I. BACKGROUND

On July 21, 2015, the pro se plaintiff, Kenneth A. White ("White"), filed a complaint in the Circuit Court of Preston County against the defendants, RCS Recovery Services LLC ("RCS"), FIA Card Services ("FIA"), [1] Wells Fargo Bank ("Wells Fargo"), and Lorain National Bank ("Lorain") (collectively

"defendants"). White's complaint sought damages for violations of the Fair Debt Collection Practices Act, the Truth in Lending Act, contract fabrication, and fraud (dkt. no. 1). The defendants removed the case to this Court on August 17, 2015, at which time the Court referred it to United States Magistrate Judge Michael J. Aloi [2] for initial screening and a Report and Recommendation ("R&R") in accordance with LR PL P 2.

Subsequently, pursuant to Fed. R. Civ. P. 12(b)(6), RCS, Wells Fargo, and BOA each filed separate motions to dismiss asserting, among other grounds, failure to state a claim upon which relief may be granted (dkt. nos. 5, 18, and 48). In addition, pursuant to Fed. R. Civ. P. 12(b)(2), Lorain filed its motion to dismiss for lack of personal jurisdiction (dkt. no. 6). In a one month period, from August 27, 2015, to September 28, 2015, White filed no less than eight motions, including a motion for default judgment (dkt. no. 42), several for summary judgment (dkt. nos. 11, 12, 24, and 43), and one moving the Court to transfer the case to the Northern District of Ohio (dkt. no. 26).

During the same time frame, the defendants jointly moved to stay the case, suspend discovery, and suspend briefings and future motions until the Court ruled on the pending motions to dismiss (dkt. no. 27). Magistrate Judge Kaull agreed, granted the motion, and stayed the case on September 15, 2015 (dkt. no. 33). Realizing, however, that White had not been afforded an opportunity to respond to the motion, Magistrate Judge Kaull lifted the stay on September 24, 2015, and gave White ten days from service of the order to file his response (dkt. no. 41). On the October 8, 2015, deadline, White moved for an extension of time to file his response to the motion to stay, arguing that he had never actually received a copy of the motion (dkt. no. 50). On October 16, 2015, Magistrate Judge Aloi granted White's motion, ordered the Clerk to serve him with a copy of the motion to stay, and ordered that he file his response within thirty days (dkt. no. 52). White timely filed his response, and, on November 30, 2015, Magistrate Judge Aloi granted the defendants' motion to stay the case.

*2 On December 10, 2015, Magistrate Judge Aloi issued an R&R, finding that White's complaint failed to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)

Case 2:25-cv-12937-TGB-KGA   ECF No. 17-6, PageID.268   Filed 03/04/26   Page 22 of 26

White v. RCS Recovery Services LLC, Not Reported in Fed. Supp. (2017)

and 9(b). Dkt. No. 61 at 13. Furthermore, he concluded that United States District Judge Irene Berger of the Southern District of West Virginia had previously ruled on the jurisdictional question, finding no personal jurisdiction over Lorain; thus, the magistrate judge concluded the doctrine of collateral estoppel barred White from re-litigating the issue in this Court. Id. at 16. Consequently, he recommended that the Court grant each of the defendants' motions and dismiss with prejudice White's complaint based on, inter alia, failure to state a claim upon which relief may be granted, and, in Lorain's case, collateral estoppel based on the lack of personal jurisdiction. Id. at 13, 16. The R&R also warned White that his failure to object to the R&R within 14 days would result in the waiver of any appellate rights he might otherwise have on this issue.[3] Id. at 17.

On December 28, 2015, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(I), White filed a notice of dismissal, informing the Court that he had settled all claims with BOA and therefore was dismissing them from this suit (dkt. no. 64). Accordingly, BOA is no longer a party in this matter.

Subsequently, on January 4, 2016, White filed his objections to the R&R, noting four objections in total (dkt. no. 61). Wells Fargo and Lorain filed responses to White's objections on January 7, 2016, and January 14, 2016, respectively.

## II. STANDARD

"The Court will review de novo any portions of the magistrate judge's Report and Recommendation to which a specific objection is made ... and the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object." Dellacirprete v. Gutierrez, 479 F. Supp. 2d 600, 603–04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir.1983)).

Vague objections to an R&R distract a district court from "focusing on disputed issues" and defeat the purpose of an initial screening by the magistrate judge. McPherson, 605 F. Supp.2d at 749 (citing Howard's Yellow Cabs, Inc. v. United States, 987 F.Supp. 469, 474 (W.D.N.C. 1997)). Further, failure to raise "any

specific error of the magistrate's review" waives the claimants right to a de novo review. Id. (citing Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). Likewise, "general and conclusory" objections to the magistrate's R&R do not warrant a de novo review by the District Court. Id. (citing Howard's Yellow Cabs, 987 F.Supp. at 474); see also Green v. Rubenstein, 644 F.Supp.2d 723 (S.D.W.Va. 2009).

## III. DISCUSSION

White raises four objections to the R&R. First, he objects to the recommendation that the Court should dismiss his claims without providing him with an opportunity to amend his complaint. Second, he objects that the R&R fails to address his request for sanctions on the defendants. Third, he objects that his claims against BOA should not be dismissed because he has already settled that claim. Finally, he objects to the conclusion that he "had a full and fair opportunity to dispute the jurisdictional issue in the Southern District" (dkt. no. 65 at 1–2). The Court will address these objections in turn.

### A. Opportunity to Amend

White begins by acknowledging the bases on which Magistrate Judge Aloi recommended dismissing his claims, namely that they failed to meet the federal pleading standards of Fed. R. Civ. P. 8 or 9, and that his complaint failed to allege sufficient facts to support his claims. Id. at 1. At no point, however, does White argue that the R&R is incorrect in its findings or reasoning, which means that he has not objected to the recommendation that his claims be dismissed for the reasons articulated by Magistrate Judge Aloi. Consequently, he has waived any de novo review of that conclusion in the R&R, and, after a thorough review, the Court finds no clear error contained therein. See Dellacirprete, 479 F. Supp. 2d at 603-04 (citing Camby, 718 F.2d at 199).

*3 White does contend, however, that he should have been given the opportunity to amend his complaint to correct its deficiencies. He argues that, because Magistrate Judge Kaull stayed the case and suspended any further briefing in his Order and Opinion dated September 15, 2015 (dkt. no. 33), he could not have

amended his complaint without violating that order. White's contention lacks merit.

To begin, the stay was imposed from September 15, 2015 to September 24, 2015, a period of only nine days, and then again on November 30, 2015, ten days before Magistrate Judge Aloi issued the R&R to which White objects. Further, he was already aware of the deficiencies of his complaint from the defendants' various motions to dismiss, as well as the complaint's deficiencies that were documented during the nearly identical litigation in the Southern District of West Virginia. See Dkt. No. 61 at 14–15 (noting previous litigation over the same claims in the Southern District at Case No. 1:13–cv–08738). Other than during the nineteen days that the case was stayed prior to entry of the R&R, White was free to file an amended complaint at any point. Nevertheless, he failed to do so, instead utilizing that time to file multiple other motions with the Court. See Mason v. Wexford Health Sources, 2011 WL 96571, at *8 (N.D.W. Va. Jan. 11, 2011) (overruling objection to complaint being dismissed with prejudice because plaintiff had chance to respond to motion to dismiss); Sweeting v. McCabe, 141 Fed. Appx. 177 (4th Cir. 2005) (affirming dismissal with prejudice even though pro se plaintiff asked in his complaint for leave to amend); Unthank v. Freedom Mortg. Corp., 539 Fed. Appx. 132 (4th Cir. 2013) (affirming dismissal of complaint where pro se plaintiffs argued that court erred by not "advising them of their right to amend the complaint or providing them an opportunity to do so").

Additionally, other than providing several statements indicating that he intended to amend his complaint, [4] he failed to provide even the slightest indication as to what factual amendments he intended to make, let alone any details as to how they might lend credence to his claims. See Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 409 (8th Cir. 1999) ("[P]arties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim.").

Finally, the Court notes that, although White's objection contends that Magistrate Judge Kaull's order of September 15, 2016, foreclosed his ability to file any "documents" with the Court, an order he claims the defendants have ignored, he himself filed no less

than fifteen documents with the Court after that date (dkt. nos. 37, 39, 42, 43, 45, 50, 54, 55, 58, 62, 64, 69–72). [5] White filed the majority of these documents during the time that the case was actually stayed. It is apparent that White's after-the-fact argument that he was somehow prevented from moving for leave not only ignores the fact that he had ample opportunity to do so during the periods when the stay was not in effect, but also that the stay never actually prevented him from filing whatever he chose. His objection rings hollow.

*4 Based on the foregoing, the Court concludes that neither Magistrate Judge Kaull nor Magistrate Judge Aloi denied White leave to amend his complaint. On the contrary, White never moved to amend, despite multiple claims that he was in the process of doing so for over a month prior to entry of the R&R. He was aware of his complaint's potential deficiencies for an even longer period of time, and he had plenty of opportunities to move for leave, as evidenced by his multiple other filings during the same time period. It is evident that White simply chose not to move for leave to amend. Accordingly, the Court **OVERRULES** his objection that the R&R improperly dismissed his claims without allowing him to amend.

### B. Sanctions

White next objects that the R&R "necessarily implies that ... there is no need to address the appropriateness of sanctioning Defendants." Dkt. No. 65 at 2. Further, he posits that the Court would benefit from further briefing on the issue. White is correct that the recommendation of the R&R would render any discussion of sanctions moot, but he is incorrect that further briefing on the issue would benefit the Court in any way.

In his "Opposition to Motion for Protective Order" [6] (dkt. no. 58), White sought sanctions for what he perceived as the defendants' filing of a meritless motion. The Court need not address the validity of his claim because the defendants prevailed on their motion when, after reviewing the parties' briefs and the entirety of the docket, Magistrate Judge Aloi granted the motion and stayed the case. [7] Accordingly, there is no legal basis to sanction the defendants for presenting

White v. RCS Recovery Services LLC, Not Reported in Fed. Supp. (2017)

a successful motion, and any further briefing on the matter would be pointless. See Fed. R. Civ. P. 11.

## C. White's Claims Against BOA

White's "third objection" is not an actual objection. Rather it is merely informing the Court that he has settled all of his claims with BOA, thereby rendering moot the R&R's recommendation that his claims against BOA be dismissed. Indeed, White noticed his dismissal of BOA on December 28, 2016 (dkt. no. 64). Accordingly, the Court need not address White's "third objection."

## D. White's Full and Fair Opportunity to Dispute the Issue of the Court's Jurisdiction over Lorain in the Southern District

One of the bases on which Lorain had moved to dismiss White's claims against it was that "collateral estoppel, also known as issue preclusion, bar[red] [White] from re-litigating the jurisdictional question because it was already decided by District Court Judge Irene Berger in the Southern District of West Virginia." Dkt. No. 61 at 14 (citing White v. Alliance One Receivable, No. 1:13CV08738, 2014 WL 320123 (S.D.W. Va. Jan. 29, 2014)). In order to assert collateral estoppel, a party must establish five elements:

> (1) that "the issue sought to be precluded is identical to one previously litigated" ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding" ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" ("element five").

Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006) (quoting Sedlack v. Braswell Servs. Group. Inc., 134 F.3d 219, 224 (4th Cir. 1998)).

In the earlier case in the Southern District of West Virginia, Judge Berger ruled that Lorain had not purposefully availed itself of the privilege of conducting activities in West Virginia, and that it had no continuous and systematic contacts with West Virginia. Consequently, Judge Berger held that the Court lacked personal jurisdiction over Lorain. Id. at 15.

*5 After analyzing all five elements of Collins, Magistrate Judge Aloi's R&R adopted Lorain's collateral estoppel argument, finding that: (1) the personal jurisdiction issue was identical to the one raised in the prior litigation; (2) the issue was actually adjudicated there; (3) it was a critical and necessary part of Judge Berger's decision, which dismissed the case; (4) "Judge Berger's decision stands as the final and valid judgment"; and (5) "[White] had a full and fair opportunity to dispute the jurisdictional issue in the Southern District." Id. at 15–16. Consequently, because the Southern District of West Virginia had already ruled that it lacked jurisdiction over Lorain, the R&R concluded that collateral estoppel applied, and it therefore recommended that the Court grant Lorain's motion to dismiss.

White's fourth and final objection begins by acknowledging that the R&R correctly concluded that Judge Berger's decision stands as a final and valid judgment, which satisfies element four of collateral estoppel (dkt. no. 65 at 2). He makes no reference at all to the R&R's findings on the first three elements of collateral estoppel. He does, however, express his disagreement with the R&R's statement that he had a "full and fair opportunity to dispute the jurisdictional issue in the Southern District." Dkt. No. 65 at 3. Finally, White states that he "now recognizes that he must first pursue relief from Judge Berger's judgment ... before he may prosecute claims against Defendant [Lorain]." Id. at 2.

To the extent that White apparently is abandoning his pending claim against Lorain, the Court need not comment. Insofar as he objects to the R&R's finding that the fifth element of collateral estoppel was satisfied, the Court concludes that White was indeed given a full and fair opportunity to dispute the jurisdictional issue in the Southern District. As the R&R recounts, and as the Court confirms, Judge Berger afforded White a full and fair opportunity to dispute the issue during the course of that litigation. After Lorain moved to dismiss in that case, White filed a response. See White. 2014 WL 320123 at *12. After Lorain filed its reply, White filed an

"Objection to Defendant's Opposition to Motion to Dismiss," see id. at \*13, and subsequently filed an affidavit in support of that objection. Id. United States Magistrate Judge Clark VanDervort summarized White's response, objection, and affidavit, and he factored them into his R&R, which Judge Berger adopted. Id. at \*12–13. As evidenced through his response, reply, and affidavit, the Southern District gave White ample opportunity to dispute Lorain's jurisdictional argument in that case.

Accordingly, the Court concludes that the doctrine of collateral estoppel precludes the relitigation of the question whether the Court has personal jurisdiction over Lorain. As a consequence, the Court **GRANTS** Lorain's motion to dismiss for lack of jurisdiction.

### IV. CONCLUSION

Based on the foregoing de novo review of White's valid objections, and finding no clear error in the remaining portions of the R&R to which he did not object, the Court:

- **ADOPTS** the R&R (dkt. no. 61);

- **OVERRULES** White's objections (dkt. no. 65);

- **GRANTS** the motion to dismiss filed by RCS (dkt. no. 5);

- **GRANTS** the motion to dismiss filed by Lorain (dkt. no. 6);

- **GRANTS** the motion to dismiss filed by Wells Fargo (dkt. no. 18);

- **DENIES AS MOOT** the motion to dismiss filed by BOA (dkt. no. 48);

- **DENIES AS MOOT** the remaining motions filed by White (dkt. nos. 11, 12, 13, 24, 26, 42, 43, and 54); and

- **DISMISSES** this case **WITH PREJUDICE** and **ORDERS** that it be stricken from the Court's active docket.

It is so **ORDERED.**

\*6 Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of Court to enter a separate judgment order and to transmit copies of both orders to counsel of record and to the pro se plaintiff, certified mail, return receipt requested.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 698774

### Footnotes

1  White incorrectly named FIA Card Services as a defendant. Bank of America, N.A. ("BOA") is the proper defendant. BOA has filed motions in FIA's place and also responded to any of White's motions directed at FIA. Accordingly, the Court refers to FIA as BOA for the balance of this Memorandum Opinion and Order.

2  The case was originally referred to Magistrate Judge John S. Kaull, but was reassigned to Magistrate Judge Aloi on October 1, 2015.

3  The failure to object to the Report and Recommendation not only waives the appellate rights in this matter, but also relieves the Court of any obligation to conduct a de novo review of the issue presented. See Thomas v. Arn, 474 U.S. 140, 148–153 (1985); Wells v. Shriners Hosp., 109 F.3d 198, 199–200 (4th Cir. 1997). It should be noted that White untimely filed objections to the R&R. (Dkt. No. 65).

White v. RCS Recovery Services LLC, Not Reported in Fed. Supp. (2017)

4    See Dkt. nos. 54, 54, and 58. At least as early as October 23, 2015, White indicated that he was "currently amending his Complaint." Dkt. No. 54 at 3 (written by White on October 23, 2015, but not filed with the Court until October 28, 2015). Yet he failed to do so, despite taking the opportunity to file multiple other documents with the Court.

5    White's objections to the R&R are not included in this number, as the R&R allowed him to file such notwithstanding the stay.

6    Based on the contents of the filing, it is clearly an opposition to the defendants' joint motion to stay the case (dkt. no. 27).

7    In addition, Magistrate Judge Kaull had also initially granted the defendants' motion.

---

**End of Document** <span style="float:right">© 2026 Thomson Reuters. No claim to original U.S. Government Works.</span>