UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS ANDREW SCHOENBERGER,
CICADA 3301 METAVERSE, L.L.C.,
a Utah domestic limited liability company,
and  THOMAS ANDREW SCHOENBERGER
doing business as CICADA 3301, CICADA
3301 TOKEN, CICADA 3301 PORTALS, and
SOPHIA MUSIK,

      Plaintiffs,

v.

LISA ANNE DERRICK and
PAULA SUE DAVIS,

      Defendants.

_____/

Case No. 2:25-cv-12937
Hon. Terrence G. Berg

CRANBROOK LAW GROUP, P.C.
Barry R. Powers (P40589)
10 S. Main St., Ste. 401
Mount Clemens, Michigan 48043-7910
(248) 515-8599
bpowers@cranbrooklawgroup.com
Plaintiffs' counsel

Michael S. Cafferty & Assoc., P.C.
Michael S. Cafferty (P36613)
333 West Fort Street Ste 1400
Detroit, MI 48226
(313) 964-3070
mcaffe@aol.com
Attorney for Defendants

_____/

PLAINTIFFS' VERIFIED RESPONSE TO DEFENDANTS' MOTION TO  DISMISS

Plaintiffs, Thomas Andrew Schoenberger ("Thomas"), Cicada 3301 Metaverse, L.L.C., a Utah domestic limited liability company, and Thomas Andrew Schoenberger doing business as Cicada 3301, Cicada 3301 Token, Cicada 3301 Portals, and Sophia Musik, submit the following as and for their verified response to Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)&(6). In support of their response, among other things, Plaintiffs rely on their verified complaint, the verification and declaration of Thomas Andrew Schroeder of all facts stated in their verified complaint pursuant to § 28 U.S.C. 1746, and the below verification and declaration of Thomas Andrew Schroeder of all facts stated in this response pursuant to § 28 U.S.C. 1746.

## ISSUES PRESENTED

Taking all allegations in the complaint as true, do the alleged defamatory and tortious statements lack any relevance to the issue litigated so that Defendants may not claim judicial proceedings privilege?

Plaintiffs answer: "Yes."

Does Michigan have *in personam* jurisdiction over Defendants who are alleged to have abused process, made defamatory statements, and otherwise committed tortious acts by misuse of the Michigan judicial process?

Plaintiffs answer: "Yes."

2

CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Chrysler Corp v Fedders Corp*, 643 F2d 1229 (6th Cir. 1981)

*Ecclesiastical Order of the Ism of Am, Inc v Chasin*, 845 F.2d 113 (CA 6, 1988)

*Lawrence v Burdi*, 314 Mich App 203 (2016)

*Schwab v Lloyds Banking Group*, 22 F.4th 103 (2nd Cir. 2021)

*United Techs. Corp. v Mazer*, 556 F.3d 1260 (11th Cir. 2009)

INTRODUCTION

For the following reasons, this Honorable Court should deny Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2)&(6).

STATEMENT OF FACTS AND PROCEDURAL POSTURE

Plaintiffs commenced this diversity of citizenship action[1] by filing their verified complaint and jury demand on September 16, 2025. PageID.1-32. In support of their complaint, Plaintiffs have filed their Verification and Declaration of Thomas Andrew Schoenberger made on personal knowledge and pursuant to § 28 U.S.C. 1746. PageID.32. In his Verification and Declaration, Thomas attests to the truth of all facts stated in the complaint. *Id.*[2]

---

[1]As the matter in controversy in this action is between citizens of different States and exceeds $75,000, this Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a)(1); further, as Plaintiffs allege and demonstrate by verification in their complaint, this Court has personal jurisdiction over both Defendants. Verified complaint at ¶¶ 19-21. PageID.4-6. Defendants' acts and omissions underlying Plaintiffs' claims were done and caused injury within Michigan. PageID.4-5. , Utah, and other state

[2]Plaintiffs bring six tort claims against both Defendants, all of which arise under state common law: abuse of process (Count One); defamation *per se* (Count Two); invasion of privacy (false light)(Count Three); intentional infliction of emotional distress (Count Four); and negligent infliction of emotional distress (Count Five). PageID.13-29.

Plaintiffs further assert claims, causes of action, and theories of recovery, for concert of action and civil conspiracy to commit abuse of process, defamation *per se*, invasion of privacy (false light), intentional and negligent infliction of emotional distress, and other unethical, immoral, wrongful, tortious, illegal and criminal acts for and with wrongful or unlawful purposes and by wrongful, improper, unlawful, unethical, or immoral means to injure Plaintiffs, rendering Defendants severally, jointly, or alternatively liable under law to Plaintiffs for their acts including those and as detailed in the complaint, and directly, proximately causing  all injuries and damages for which Plaintiffs seek redress in this action, as further detailed in the complaint, which claims

4

1.     The Parties

Plaintiffs are citizens of Utah who conduct, and at times pertinent to this action conducted, business in Michigan, specifically carrying out the business of the composition, performance and playing of music. PageID.2. Thomas is a preeminent, award-winning, and prolific composer, pianist, and musician, who has mastered and enjoys expertise in the performance and playing of music on numerous musical instruments. *Id*.

Plaintiff Cicada 3301 ("Company") is a group of persons that includes Thomas and other creative persons who create music, art, poetry and puzzles meant to inspire those interested in history, music, and culture. It is the inventor and owner of the copyrighted name "Cicada 3301" and all variations, styles, and derivations of that term and brand, of which Thomas and the Company, alone, have sole, exclusive, free, and unencumbered rights.

They also have copyright rights in the Cicada logo and trademark rights in the Cicada logo and in the Cicada 3301 word trademark.[3] PageID.3. The Company

---

and theories constitute, in many important and salient respects, the gravamen, or one key gravamen of several, of this action (Count Six). PageID.4, 28-31. *See also, generally*, PageID13-29 (tort claims, causes of action, and theories of recovery underlying, and to which attach, and, thus, must be read in relation to, and inextricably intertwined, in connection, and fully consonant with, Plaintiffs' corollary and derivative tort claims, causes of action, and theories of recovery of concert of action and civil conspiracy in this action).

[3]Thomas and the Company also operate and conduct business as, under, and in the copyrighted names of "Cicada 3301," "Cicada 3301 Token," and "Cicada 3301 Portals,"

5

conducts, and at times pertinent to this action conducted, business in Michigan. PageID.2-3.

Defendant Lisa Anne Derrick ("Derrick") is a California citizen, and Defendant Paula Sue Davis ("Davis") is a citizen of Indiana. Both Defendants at times pertinent to this action have conducted, and both continue to conduct, business in Michigan, including in the Eastern District of Michigan. PageID.4.

They engaged in acts committed in Michigan together with residents of Michigan.[4]

---

which names and brands, likewise, were invented by Thomas and the Company and are the sole and exclusive property of Thomas and the Company. (Thomas and the Company are collectively referred to below as "Thomas.") Thomas has numerous listeners, viewers, participants, and devotees in California, Utah, and throughout the United States, including many who are residents of Michigan and many who are, in particular, residents of the Eastern District of Michigan. The Company is operated on a for-profit basis, but it also commits a large part of its operation and resources to charitable causes, such as raising money for the impoverished and displaced women and children in war-torn countries. Although sometimes referred to as a "movement," Cicada 3301 is non-political, utterly private movement, to the extent it may be characterized as a "movement," at all. PageID.3-4.

[4]Defendants are former associates-turned-detractors of Thomas, and formed, with others, a growing group of detractors, including Melissa Blackburn Bogaerts, James Stewartson, and Cory Michael Daniel aka ThePhoenixEnigma aka brujo2u to manufacture and foment false facts of and concerning Thomas to aid them in their vicious campaign to discredit and destroy Thomas. That group has been continuously growing at an increasingly rapid rate as time passes, and their vicious campaign has been continuing and gradually intensifying, from the date of the formation of this group through present day. PageID.6

Defendants solicited the aid of Bay City, Michigan resident and ex-convict, Robert Allen Sauerwald, retaining him to perform services for them in Michigan to cyberstalk, harass, terrorize, and otherwise target and induce others to target, Thomas online, using, among other things, Sauerwald's "The Lone Cicada" YouTube channel based in,

generated from, and operated out of Bay City, Michigan. In the wake of Defendants' solicitation, recruitment, and hiring of Sauerwald to commit such wrongful acts, Sauerwald, on the one hand, and Defendants, on the other hand, made an agreement for Sauerwald to commit such acts, operating out of his residence and business locations in Michigan with the knowing and intentional participation, facilitation and material assistance of Defendants and with all of them knowledgeable of the wrongdoing, as well as of others, and promised to perform such services working in such locale. They agreed to work together to generate injurious communications from that locale, with Defendants promising to pay significant compensation to Sauerwald in return for his direct acts in committing such wrongdoing, as well as Sauerwald's acting to aid Defendants in their direct commission of such wrongdoing, themselves, in their own right. And Defendants did, in fact, make such payment to Sauerwald, as promised. PageID.6-8. And Sauerwald did, commit such wrongful acts injurious to Plaintiffs in Michigan, acting jointly and together with Defendants. PageID.7-8.

On January 16, 2025, Davis hosted a livestream entitled "The Evidence Speaks for Itself" on her "SewerTown" Rumble channel in which she, her husband, Jesse Davis, Daniel Doud, and others stalked, harassed, defamed, and put in a false light Thomas, with statements including "Tommy boy, stop being stupid." Jesse Davis and Doud brandished guns at the camera. PageID.8.

Defendants have put Thomas's life in danger and have destroyed his ability to earn a living as a composer. As a direct and proximate result of Defendants' unlawful conduct, Thomas is permanently psychologically paralyzed, traumatized, and in profound fear for the safety and well-being of family, friends, and himself. Defendants' plan, artfully executed, working individually, together, and in active concert with others having knowledge of the wrongdoing, was to "cancel" Thomas, permanently. Sadly, they have succeeded. Defendants have caused Thomas to live in constant turmoil from Defendants' malicious communications, which include but are not limited to Twitter, its successor, X, blog sites, news articles, old and new forms of media, in private messages, on servers and platforms, including servers Defendants hosted for groups of computer internet hackers, media representatives, compensated trolls, as mercenaries to act at Defendants' behest, to spread further their own, evil "narrative" against Thomas. PageID.9.

7

2.      Defendants' Tortious Conduct

Plaintiffs set for illustrative acts constituting some of the grievous and grave tortious conduct of Defendants in their verified complaint, which Plaintiffs incorporate by reference as though fully set forth herein. However, that misconduct is so vast and extensive that it is impracticable even to recount comprehensively in the complaint. It certainly is far too extensive, and the record of that misconduct far too voluminous, to set forth in the present brief.

It would require a several-day evidentiary hearing before this Court adequately, fully, and fairly, for Plaintiffs to present such exposition and voluminous testamentary and documentary evidence. Thus, Plaintiffs hereby request such evidentiary hearing should the Court believe it helpful to the Court in deciding the present motion and permits such hearing.

While Defendants' tortious conduct against Plaintiffs is too vast, and the record of such wrongful conduct too voluminous, to catalogue in this Brief, Plaintiffs highlight but a few examples of such misconduct, as well as the location of the misconduct and of the resultant injuries of such misconduct, simply to give this Honorable Court an overarching understanding of the nature and extent of the action necessary to decide the present motion, with or without a hearing of any kind.[5]

---

[5]*See supra* footnotes 2-4 and accompanying text and *infra* footnote 6 and accompanying text. *See also infra* at pp.  9-11.

8

On September 4, 2025, in *Schoenberger v Trustees of Michigan State University*, State of Michigan, Wayne County Circuit Court Case No. 25-012153-CZ, Defendants, through their counsel providing them joint representation in that action, Nicholas A. Cirino of Detroit, Michigan (former law partner of Defendants' counsel of record in this action, who continues to litigate cases in collaboration and co-counsel with him) filed in the Wayne County Circuit Court in Detroit, Michigan, their "Motion for Summary Disposition Pursuant to MCR 2.116(C)(1)(Lack of Personal Jurisdiction)" alleging Defendants' lack of minimum contacts with Michigan and seeking dismissal of the action against them pending in Wayne County Circuit Court on that sole legal, factual, and procedural basis.

At page 4 of the brief Defendants filed in support of Defendants' motion, Defendants falsely and maliciously state that Derrick "*was sexually assaulted by Schoenberger in the 1990s . . . .*" (Emphasis added). Defendants falsely and maliciously state that Thomas "has *pursued a campaign of harassment*" against Derrick since 2020. *Id.* (emphasis added). PageID.10. Defendants falsely and maliciously state that Thomas has engaged in an "online *harassment campaign* against [Davis] that started in 2017 . . . ." *Id.* at p. 6 (emphasis added). PageID.9-11.

In her affidavit filed in support of Defendants' motion (and attached as Exhibit 5 to the brief in support of the motion), Derrick falsely and maliciously states that, at some unspecified time, during a visit with Thomas, she "fell asleep and *woke up to Schoenberger having non-consensual sexual intercourse with [her]*." Derrick Affidavit

9

at p. 2 (emphasis added). She further falsely and maliciously states that she "began to share [her] *truthful story* about *[her] nonconsensual sexual encounter with Schoenberger.*" *Id.* at p. 3 (emphasis added). PageID.11. Derrick further falsely and maliciously states that Thomas harassed and stalked her ("Schoenberger sent me an unsolicited harassing email in 2019" and "Schoenberger and people affiliated with him continued to harass and stalk me . . . ."). *Id.* at pp. 2-3. PageID.11-12.

In her affidavit filed in support of Defendants' motion (and attached as Exhibit 4 to brief in support of the motion), Davis falsely and maliciously states that Thomas "led [her] down a path of supernatural and occult matters, which led to [her] suffering mental health issues requiring psychiatric treatment." Davis Affidavit at p. 3. PageID.12. She further falsely and maliciously states that "[a]fter my mental breakdown, Schoenberger and his associates began cyberstalking me, sometimes sending me scores of emails every day. This has caused me to suffer additional trauma." *Id.* PageID.12.[6]

None of the false and malicious statements in Defendants' affidavits and other court papers filed with the Court or the underlying action, as quoted above, are germane to either the motion, specifically, or to the underlying action as a whole, generally.

---

[6]In all of this litigation misconduct, that is, the use of process in that civil action, Defendants acted together and jointly pursuant to a common plan, purpose, and active conduct in execution of such plan, in active concert and joint and common participation with each other and with their common legal counsel providing them joint representation in defense of the claims asserted against them in that action, their counsel in the present action and their counsel in the underlying Wayne County Circuit Court action. PageID.9-12.

10

PageID.12-13. All of them are entirely and absolutely gratuitous and far beyond any fact or issue arguably or possibly relevant to the factual and legal issues in the motion (the legal basis of which is limited solely to whether Defendants have or have had minimum contacts with Michigan) or to the factual and legal issues, claims, and defenses, in the entire action, itself. PageID.12-13. Because Defendants have failed and refused to honor Thomas's several demands to rectify their wrongdoing, it has become necessary for Thomas to bring the present action in this Court. PageID.13.

ARGUMENT

1.    Defendants Have No Judicial Proceedings Privilege

No tortfeasor may invoke and enjoy protection under the judicial proceedings privilege when the injurious statements or matters at issue bear no connection with the litigation. *Lawrence v Burdi*, 314 Mich App 203, 218 (2016). Where, taking the plaintiff's allegations as true, the plaintiff avers that statements made in the course of judicial proceedings, including pleadings and argument, have no relevance, pertinence, or materiality to the matter being litigated, the plaintiff sufficiently makes out that allegation in his complaint. *Id*. at 219-220. *See also Hartung v Shaw*, 130 Mich 177, 179-180 (1902); *Sanders v Leeson Air Conditioning Corp*., 362 Mich. 692, 695 (1961). Defamatory statements that serve no purpose in resolving the issue being litigated or the case find no protection in the privilege. *Lawrence, supra,* at 218-219.

In the present case, allegations that Thomas committed rape and other wrongdoing against Defendants bears no relevance, pertinent, materiality, or

11

relationship whatsoever to the issue being litigated in the underlying case, that is, whether Michigan may exercise personal jurisdiction over Defendants on the facts averred in the complaint in that case. Nor do such slanderous statements serve any purpose in resolving that particular legal issue or any issue in the underlying case, for that matter. Thus, Plaintiffs have demonstrated that Defendants enjoy no judicial proceedings privilege to use as a shield against Plaintiffs allegations of tortious conduct.

2.     Michigan Has Personal Jurisdiction Over Defendants

As demonstrated above, Plaintiffs' causes of action set forth in their verified complaint sound, in salient part, in theories of concert of action and conspiracy (Count Six) to commit all of the torts set out in the factual and legal averments in the remainder of the complaint underlying the concert of action and civil conspiracy claims, causes of action, and theories of recovery (Counts One – Five)

In sum, Plaintiffs aver that Defendants conspired with Michigan resident Sauerwald, as well as several other "unnamed co-conspirators, to injure Plaintiffs in Michigan, through the carrying out of acts and a campaign to injure Plaintiffs taking place in, emanating from, or closely connected in fact and law to Michigan.

As further demonstrated above, Plaintiffs aver that Defendants in *Schoenberger v Trustees of Michigan State University*, State of Michigan, Wayne County Circuit Court Case No. 25-012153-CZ, the underlying action, committed wrongful acts directly and through their authorized and directed agents, attorneys at law, and attorneys in fact,

acting as their instrumentalities and representatives to commit their wrongdoing and carry out their unlawful campaign to injure Plaintiffs in Michigan.

Specifically, Plaintiffs properly, fully, and adequately aver in considerable detailed statements of fact in their complaint that Defendants manipulated and misused, with those detailed and extensive statements of fact verified by Thomas's declaration accompanying the complaint and also in his below declaration. That is, Plaintiffs have demonstrated that Defendants, through their unlawful litigation misconduct and abuse of process in Michigan, manipulated and have done violence to the judicial branch of the government of the State of Michigan.

They have done so solely to commit, and to conspire along with their common counsel and others to commit, all of the tortious acts giving rise to all of the claims, causes of action, and theories of recovery Plaintiffs aver om their verified complaint. These tortious acts include the malicious misuse of such process to commit wrongful acts solely and purposely to satisfy their ulterior purpose, in no way germane to, and entirely unrelated to, the issue of personal jurisdiction, specifically, or to the entire civil action, generally. It is in no way part of the regular conduct of litigation, defense of the action, or proper and regular use of process.

That ulterior purpose was and remains to defame and otherwise gravely to injure Plaintiffs in their property, business, physical persons, and emotionally, under the guise of making a personal jurisdictional challenge. That jurisdictional challenge, of course,

13

in no way required them to make such wicked, gratuitous, false, defamatory, and scandalous allegations against Plaintiffs.

Defendants did so knowingly, and with the specific intent and design of using as a shield to commit such defamation and other wrongful conduct against Plaintiffs the so-called "judicial proceedings privilege." Such assertion, alone, in and of itself, constitutes yet an *additional*, separate, and independently-actionable act of litigation misconduct, abuse of process, and other tortious conduct to injure Plaintiffs.

Plaintiffs have brought forward their conspiracy to commit various tort claims in their verified pleadings, they have properly alleged the elements to establish liability in their pleadings signed and filed under due verification, and they have substantiated their allegations of liability under substantive tort law with testimonial and documentary evidence more than sufficient to make out conspiracy to commit these various torts against Plaintiffs.

Plaintiffs have further come forward with due proof, in substantial testimonial and documentary evidence, to establish that the acts surrounding the conspiracy to commit torts against Plaintiffs satisfy both the requirements of the Michigan long-arm statute, MCL 600.705(2), as well as fourteenth amendment due process safeguards. *Alan B McPheron, Inc v Koning*, 125 Mich. App. 325, 334 (1983); *Cole v Doe*, 77 Mich. App. 138 , 143 (1977).

Plaintiffs have thus, more than satisfied their burden to make a *prima facie* showing of facts establishing the conspiracy to commit the defamation and invasion of

14

privacy torts, as well as the other torts averred, with sufficient evidentiary support to make out a *prima facie* case that Michigan is to exercise *in personam j*urisdiction over Davis and Derrick. *Jeffrey v Rapid American Corp*, 444 Mich. 178, 184 (1995); *Yoost v Caspari*, 295 Mich. App. 209, 221-224 (2012).

Defendants, having voluntarily and knowingly conceived of, hatched their joint plan, and, in fact, have joined a Michigan conspiracy, including the conspiracy to abuse process and exploit the judicial branch of the government of the State of Michigan, now seek to escape to their foreign states to hide there and, thus, render themselves not subject to suit in Michigan. This, the law forbids. They are fully subject to this suit in this Court.

Defendants contend that they do not reside in Michigan and, thus, it is impermissible for a court in Michigan, state or federal, to exercise personal jurisdiction over them. But this argument ignores the established rule of law that the liability of the conspirator committing the tort in Michigan is visited on all co-conspirators by attribution, whether they were ever physically present in, had any other cognizable relationship with, or connection, to Michigan, as both a matter of Michigan substantive tort law and federal civil procedural law.

Under the "conspiracy theory" for personal jurisdiction, when two or more actors are alleged to have combined to injure the plaintiff all are subject to the exercise by the State of Michigan of personal jurisdiction over them so long as one of them inflicts an actionable wrong against the plaintiff under principles of attribution. *Chrysler Corp v*

15

*Fedders Corp*, 643 F2d 1229, 1236-1237 (6th Cir. 1981); *Schwab v Lloyds Banking Group*, 22 F.4th 103, 125 (2nd Cir. 2021); *United Techs. Corp. v Mazer*, 556 F.3d 1260, 1281-82 (2009); *Yoost. supra*, at 224.

> Under the "conspiracy theory" of jurisdiction, a conspirator not within the forum state may nevertheless be subject to the jurisdiction of the forum state on the basis of the acts a coconspirator committed there. *Chrysler Corp v Fedders Corp*, 643 F2d 1229, 1236-1237 (CA 6, 1981). The rationale for this rule is that when one member of a conspiracy "inflicts an actionable wrong in one jurisdiction, the other member should not be allowed to escape being sued there by hiding in another jurisdiction." *Stauffacher v Bennett*, 969 F2d 455, 459 (CA 7, 1992). But mere allegations that a conspiracy exists between the defendant and another over whom the court has jurisdiction are insufficient. *Id*. at 460; *Chrysler Corp*, 643 F2d at 1236-1237. Rather, evidence or facts must support the allegations of conspiracy. *Chrysler Corp*, 643 F2d at 1236-1237; *Ecclesiastical Order of the Ism of Am, Inc v Chasin*, 845 F.2d 113, 116 (CA 6, 1988); [***21] *Coronet Development Co. v. F. S. W., Inc.*, 3 Mich. App. 364, 369, 142 N.W.2d 499 (1966).

*Id* at 224-225. Thus, with the two of them and their agents and privies acting as co-conspirators, and further acting as co-conspirators with Michigan resident Sauerwald and in abuse of process of the Michigan courts, Defendants are treated in the law as indistinct from Sauerwald and others, as well as indistinct from their common attorneys at law, attorneys in fact, and other agents whom they have employed to commit their abuse of process, defamation, and other tortious litigation misconduct in the courts of the State of Michigan against and to the direct injury of Plaintiffs, for all purposes of *in personam* jurisdictional, constitutional, and legal analysis, irrespective of the nature and extent of their purposeful physical presence in, or absence from, the territory within the geographical boundaries of the State of Michigan.

CONCLUSION

For the above reasons, this Court should deny Defendants' motion to dismiss.

Respectfully submitted,

CRANBROOK LAW GROUP, P.C.

By  /s/ *Barry R. Powers*
     Barry R. Powers (P40589)
Plaintiffs' counsel

DATED: March 25, 2026

I, Thomas Andrew Schoenberger, declare under penalty of perjury that the foregoing is true and correct. Executed on March 25, 2026.

/s/*Thomas Andrew Schoenberger*
Thomas Andrew Schoenberger